THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES J. McGOWAN, Defendant-Appellant.

Third District   No. 76-177

Opinion filed January 11, 1977.

Stephen Elman, Assistant Public Defender, of Peoria, for appellant.

Michael M. Mihm, State's Attorney, of Peoria (James E. Hinterlong, and Robert Hansen, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE STENGEL delivered the opinion of the court:

The defendant, James McGowan, was convicted of unlawful use of a weapon, a Class A misdemeanor, following a bench trial in the Circuit Court of Peoria County. He was sentenced to two years probation, including a condition of 90 days imprisonment in the county jail. The sole issue on his appeal is whether there was a reasonable basis for the police officers to stop defendant and conduct a pat-down for weapons. We affirm.

At about 12:50 a.m. on April 13, 1975, uniformed police officers George Fulton and Orlando Allen prepared to exit the city garage in their marked squad car. As they left the garage, which is located in the 1600 block of S. W. Washington Street in Peoria, Fulton noticed two males on the south side of Washington Street who appeared to be coming from between the Hiram Walker building and an adjoining lot. He observed that defendant was dressed in black and that the second male, defendant's brother, was similarly clad in very dark clothing. The two men crossed the street, walking in a normal fashion, with their arms by their sides.

The officers asked the two men to stop, which they did, and explained to them the reason for the stop. During the course of this conversation, Fulton asked the two men their names and certain other information, and began patting down defendant for the protection of the two officers. Fulton discovered a .22 Ruger automatic pistol stuffed in the top of defendant's pants and arrested him.

The stop occurred in an industrial area comprised of warehouses, the Hiram Walker plant and farm supply buildings. The only nearby tavern was located several blocks away and was closed at the time of the events in question. Officer Fulton had worked the early morning shift in this area for about two years and very seldom saw anyone there other than a hitchhiker. When Fulton stopped the two subjects they told him they had walked over the bridge from East Peoria.

An indictment charging defendant with the felony of unlawful use of a weapon was returned on July 30, 1975. On October 13, 1975, defendant filed motions to suppress evidence, to quash the warrantless search and to dismiss the indictment.

On January 2, 1976, a hearing on the motion to suppress was held. At this hearing Officer Fulton testified that no search warrant had been issued for the defendant; that he knew of no outstanding arrest warrants for the defendant; that he was unaware of any offenses which may have occurred in his patrol area in the hours preceding the stop; and that he did not believe defendant was committing an offense at the time of the stop. At the conclusion of the hearing the trial court denied defendant's motion to suppress.

On January 12, 1976, defendant waived a jury and was tried by the court alone which found him guilty on the indictment. The trial court subsequently vacated its judgment because the State failed to prove the required element of a prior conviction of a felony within the last five years, but found defendant guilty of the lesser included misdemeanor of unlawful use of a weapon.

Defendant challenges the propriety of the police officer's conduct under the Illinois "stop and frisk" statutes (Ill. Rev. Stat. 1973, ch. 38, pars. 107—14, 108—1.01). These statutes are the Illinois codification of *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. Section 107—14 permits a police officer, after having identified himself as such to temporarily stop and question a person in a public place without first placing him under arrest. It allows an officer to question a person as to his name and address and to seek an explanation of his actions, if the officer reasonably believes from the circumstances that the person has committed or is about to commit an offense. Section 108—1.01 of the Code of Criminal Procedure provides that the officer may search the

person for weapons if the facts surrounding the stop indicate that the officer's life may be threatened. This court believes that defendant's argument that the seizure was illegal is not persuasive.

■■ ■ In most instances police must, whenever practical, obtain advance judicial approval of searches and seizures through the warrant procedure, and failure to comply with the warrant requirement can only be excused by exigent circumstances. (*Cf. Warden v. Hayden* (1967), 387 U.S. 294, 18 L. Ed. 2d 782, 87 S. Ct. 1642.) Here, we deal with the fundamentals of police conduct—necessarily quick action predicated upon the on-the-spot observations of the officers on the beat. This historically has not been, and as a practical matter could not be, subjected to the warrant procedure. Instead, the conduct involved in this case must be tested by the fourth amendment's general proscription against unreasonable searches and seizures.

In order to assess the reasonableness of Officer Fulton's conduct as a general proposition, we must first consider the nature and extent of the governmental interests involved. Effective crime prevention and detection recognizes that a police officer may in appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. It was this recognized investigative function Officer Fulton was discharging when he decided to approach defendant and his brother.

The record reveals that Fulton had two years experience in the area of the stop, which was an industrial and high crime area. The defendant and his brother appeared to have emerged on the street from between a building and an adjacent lot. Fulton testified that it was late at night and that both were dressed entirely in dark clothing. He also stated that pedestrian traffic in the area at the time in question was extremely rare. When viewing the transaction as a whole, it was reasonable, under the statute and *Terry*, for the officers to stop and briefly question the defendant. One might even conclude that it would have been poor police work for an officer of this experience and familiarity with this area to have failed to investigate this behavior further.

Furthermore, even if it could be argued that the patrolmen here had no articulable reason to forcibly seize the defendant, we cannot say that the defendant's right to be free from an official interference by way of inquiry is absolute. To do so would require us to conclude that, when the police possess a need or desire to initiate an encounter with a private individual, they must be prepared to seize him or else do nothing. We believe that the police officers legitimately approached McGowan to inquire as to his identity. The encounter here was devoid of harassment or intimidation. It was brief, lasting only a few minutes, and the questions were circumscribed in scope to the officers' task as patrolmen. Significantly, the

encounter did not subject McGowan to a loss of dignity, for where the police degrade and humiliate their behavior is to be condemned. Moreover, the attendant circumstances were sufficient to arouse the officers' interest. Therefore, even if there had been no articulable facts here to justify a forcible seizure of defendant, the police would have been authorized to make the brief limited inquiry that they did. See *People v. DeBour* (1976), 40 N.Y.2d 210, 352 N.E.2d 562.

The crucial issue is whether there was justification for Fulton's pat-down for weapons in the course of the investigation.

■■ Courts cannot ignore the interest of a police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could be used against him. In *Terry*, the court said:

"The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. [Citations.] And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." 392 U.S. 1, 27, 20 L. Ed. 2d 889, 909, 88 S. Ct. 1868, 1883.

■■ We believe that Fulton's decision to seize McGowan and pat his clothing for weapons was reasonable and not the product of an inventive imagination. It is apparent to us that the search of the defendant was the tempered act of a policeman who in the course of an investigation had to make a quick decision as to the necessity of protecting himself and others from possible danger and who acted reasonably under the circumstances. The search Fulton conducted was limited to a pat-down of defendant's outer clothing, and the trial court did not err in refusing defendant's motion to suppress.

Accordingly, the judgment of conviction of the Circuit Court of Peoria County is affirmed.

Affirmed.

STOUDER, P. J., andd SCOTT, J., concur.