THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ROBIN LITTLE, Defendant-Appellee.

First District (3rd Division)   No. 84—2720

Opinion filed September 30, 1987.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and Mary E. Shields, Assistant State's Attorneys, of counsel), for the People.

Roy J. Faddis, of Palos Hills, for appellee.

8

JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Robin Little, was stopped at a stationary nighttime roadblock operated by the Illinois State Police and was arrested for driving while under the influence of alcohol. (Ill. Rev. Stat. 1983, ch. 95½, par. 11—501(a)(2).) The trial court sustained defendant's motion to quash the arrest and to suppress the evidence, and the State has appealed. The issue is whether the roadblock was reasonable under the fourth amendment to the United States Constitution. U.S. Const., amend. IV.

The roadblock in question was part of a statewide program for vehicular safety checks. The Department of Transportation selected the location—just east of Illinois Route 171 at Illinois Route 83, several miles from Lemont, Illinois. The Illinois State Police operated the subject roadblock between 11 p.m. on June 29, 1984, and 5 a.m. on June 30, 1984. The program was coordinated by the police headquarters for the particular district in which the roadblock was located. Prior to establishment of the roadblock, a uniform set of written instructions was distributed statewide to the districts. In addition, State troopers were orally briefed as to the procedures to be followed. According to State police Sergeant Ryan, who was in charge of the subject roadblock, the instructions were that the troopers were "absolutely not [to] discriminate." Instead, they were to stop every vehicle traveling east on Route 83 from Route 171 and check for visible safety violations on the headlights, taillights, and turn signals. They were also to check the driver's license and license plates. Vehicular registration was checked only if a violation was found.

Sergeant Ryan testified that 15 to 20 uniformed troopers were present at the site. They stood with a sign on the side of the road. The sign said "State Police Safety Check." Their squad cars were parked on the right shoulder of the road. The road consisted of two eastbound lanes, two westbound lanes, and two shoulders. At Route 83, the road constricted to one lane in each direction. The speed limit was 55 miles per hour. According to Sergeant Ryan, all vehicles traveling east on Route 83 from Route 171 were flagged past the sign to their right and were advised to stop. The motorists were then asked to produce their driver's licenses and were permitted to proceed if no violation was apparent. If a violation was found, then the motorist would stop at a secondary station where he was issued a warning or a citation. Seven motorists in addition to defendant were arrested for drunk driving; approximately 35 others were arrested for open liquor violations; approximately 50 others were arrested or warned for equipment violations; and an unspecified number of other motorists

were arrested for registration or other violations.

Sergeant Ryan participated in defendant's arrest. After defendant stopped the car, Sergeant Ryan explained that the police were conducting a roadside safety check. He then performed the safety check without entering the car and without walking completely around it. No safety violations were found. When defendant was asked to produce his driver's license, he complied but became profane. Given defendant's use of profanity and the fact that there were several bars situated within a mile from the roadblock, the troopers believed that there was a possibility that defendant had been drinking. They therefore asked defendant to step out of the car and to perform coordination tests. Sergeant Ryan believed that defendant's car was stopped on the shoulder of the road while defendant stood in front of the car and performed the sobriety tests.

Barbara Holloway, a passenger in the car, testified that they were proceeding east on Main Street just west of the intersection of Route 83, Route 171, and Main Street, about three or four miles from Lemont. She described Main Street as a narrow, winding roadway with a speed limit of 55 miles per hour. She said that Main Street was very dark but that there were several streetlights by the intersection. As they proceeded through the intersection, they noticed police cars with flashing lights on the side of the road. They slowed down to drive around what they then thought was the scene of an accident. An officer stepped in front of the car and told defendant to stop. Defendant stopped the car in the street. The passenger testified that defendant produced his license without any problem. They both asked the trooper why they had been stopped. According to the passenger's testimony, the trooper merely looked at defendant's license without responding, and ordered defendant to get out of the car. The passenger estimated that three or four cars were waved through the roadblock by several troopers who were just standing around. She said that the troopers told those motorists, "You can just go on." She also stated that she was familiar with safety checks, and that no safety check was performed on the car that night. On cross-examination, she said that the three or four cars which were waved on had been stopped first.

Relying upon *People v. Bartley* (1984), 125 Ill. App. 3d 575, 466 N.E.2d 346, the trial court sustained defendant's motion to quash. The Illinois Supreme Court subsequently reversed the appellate court (*People v. Bartley* (1985), 109 Ill. 2d 273, 486 N.E.2d 880, *cert. denied* (1986), 475 U.S. 1068, 89 L. Ed. 2d 608, 106 S. Ct. 1384) and held that a temporary, stationary, nighttime roadblock designed to detect

drunk drivers did not violate the fourth amendment. In reaching that ruling, the court balanced the public interest in apprehending drunk drivers against the objective physical and subjective psychological intrusions caused by a stop, and concluded that the public interest in apprehending drunk drivers outweighed the intrusion presented by the roadblock.

Defendant in the case at bar concedes on appeal that the roadblock had a legitimate public purpose. Defendant contends, however, that the objective physical and subjective psychological intrusion produced by the roadblock was unreasonable and rendered the roadblock unconstitutional.

Objective intrusion is tested by the length of the stop, the nature of the questioning, and whether a search is performed. (*People v. Bartley* (1985), 109 Ill. 2d 273, 282, 486 N.E.2d 880.) Subjective intrusion is tested by the fear, apprehension, anxiety, concern, fright, or annoyance of the motorists. (*People v. Bartley* (1985), 109 Ill. 2d 273, 282, 486 N.E.2d 880.) Where the discretion of the individual officers is circumscribed, and where the roadblock is conducted in a safe manner, the subjective intrusion is minimal because motorists need not fear that they are being arbitrarily singled out. (*People v. Bartley* (1985), 109 Ill. 2d 273, 288, 486 N.E.2d 880.) Factors to be considered in measuring the level of intrusion produced by a roadblock are the absence of unfettered discretion on the part of individual officers, the presence of procedural guidelines, a decision made by supervisory personnel to establish a roadblock, the selection of the site by supervisory personnel, the systematic stopping of vehicles, a sufficient showing of official authority, and advance publicity. (*People v. Bartley* (1985), 109 Ill. 2d 273, 289-91, 486 N.E.2d 880; *People v. Lindblade* (1986), 143 Ill. App. 3d 151, 153, 492 N.E.2d 1015.) A roadblock can pass constitutional muster even if not every vehicle is stopped, provided that it is clear that vehicles are being stopped in a systematic and nonrandom manner. (*People v. Bartley* (1985), 109 Ill. 2d 273, 282, 486 N.E.2d 880.) Furthermore, the failure to provide experienced troopers with instructions on how to detect a drunk driver does not render a roadblock unconstitutional. (*People v. Bartley* (1985), 109 Ill. 2d 273, 290, 486 N.E.2d 880.) Nor does the lack of advance publicity invalidate a roadblock where other factors serve to reduce the subjective intrusion. *People v. Bartley* (1985), 109 Ill. 2d 273, 291, 486 N.E.2d 880.

In the instant case, a stop was brief unless a violation was found. There was no search of the car. Instead, there was only a visual inspection of certain safety equipment, including headlights and

taillights. Therefore, it was reasonable to operate the roadblock at night. Despite the darkness of the area, the 55-miles-per-hour speed limit, and the lane constriction, the intersection was illuminated by streetlights and motorists had ample time to slow down, to pull over, and to stop. The roadblock itself was a clearly marked, fixed checkpoint manned by 15 to 20 uniformed State troopers and heralded by a "State Police Safety Check" sign, flashing lights, and parked squad cars. This was a sufficient showing of authority to alert motorists to the fact that an official police operation was being conducted. Sergeant Ryan was in charge of the roadblock and the site was selected and the roadblock was operated pursuant to a statewide program coordinated by the Department of Transportation and State police headquarters: in other words, by supervisory personnel. Even though some troopers may have waved some motorists through the roadblock, their discretion was circumscribed by the uniform written instructions which were circulated statewide to the troopers, as well as by the instructions given during the oral briefings. The instructions required that all eastbound vehicles approaching the subject roadblock be systematically stopped. This is sufficiently nonrandom to allay motorists' fears of being arbitrarily singled out. Given these factors, we conclude that the objective and subjective intrusion was minimal and that the roadblock was reasonable.

Defendant relies upon *Commonwealth v. McGeoghegan* (1983), 389 Mass. 137, 449 N.E.2d 349. However, the roadblock there involved an insufficient showing of official authority, inadequate lighting, and inadequate warning to approaching motorists, and the Illinois Supreme Court specifically distinguished the case in *People v. Bartley* (1985), 109 Ill. 2d 273, 285, 291, 486 N.E.2d 880.

For all of the foregoing reasons, we hereby reverse the suppression order entered by the circuit court of Cook County and remand for further proceedings.

Order reversed, cause remanded.

McNAMARA, P.J., and WHITE, J., concur.