THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
GAVIN P. HOULIHAN, Defendant-Appellee.

Second District   No. 2—87—0012

Opinion filed March 23, 1988.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and

Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

John F. Donahue, of Oak Brook, for appellee.

PRESIDING JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Gavin Houlihan, was charged with two counts of driving under the influence of alcohol. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.) The trial court granted his motion to suppress evidence and quashed his arrest on the ground that the arresting officer had no reasonable basis to stop defendant's vehicle. The State appeals, contending that the officer's decision to stop defendant's truck was reasonable under *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and section 107—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 107—14).

Officer Hugh DeWitt of the Wheaton police department was on routine patrol at approximately 2:50 a.m. on May 29, 1986. He was headed west on Sawyer Avenue in a residential section of Wheaton when he saw a truck headed in the opposite direction. As the truck, which was being driven by defendant, approached DeWitt's car, the officer heard a loud noise which he described as similar to a snowplow on dry pavement. DeWitt testified that he could tell there was something under defendant's truck, but he could not identify the object because he was blinded by defendant's headlights. DeWitt then stopped defendant's truck.

As defendant and DeWitt both got out of their vehicles, DeWitt noticed that defendant had an odor of alcohol on his breath and seemed unsure of his balance. DeWitt asked defendant if he was aware of a loud noise coming from his truck and whether there were any problems with the truck. Defendant responded that there was nothing wrong with his truck. DeWitt then looked under the front end and noticed a large plastic garbage can wedged underneath the truck between the front bumper and the wheel well. DeWitt asked defendant what had happened. Although defendant had previously told DeWitt that he was on his way home from Lombard, he then stated that he must have run over the trash can when he left his house.

DeWitt then administered two field sobriety tests. In his opinion, defendant did not perform well on these tests. DeWitt then informed defendant that, in the officer's opinion, he was under the influence of alcohol and arrested him.

Officer William Cannon of the Wheaton police department also testified. Cannon arrived on the scene while DeWitt was administering the sobriety tests. Cannon noticed the garbage can wedged under the front end of defendant's truck. Cannon investigated how the can came to be there. Papers in the can led Cannon to an address on Sawyer Avenue. Upon arriving at that address, he noticed garbage strewn for some 60 yards down the street. Cannon saw tire tracks on the parkway leading up to other garbage cans similar to the one under defendant's truck. After hearing this evidence, the court granted defendant's motion. The court found that Officer DeWitt did not see the garbage can under defendant's truck prior to making the stop, and that the mere fact of hearing a noise did not provide a specific and articulable basis for the stop. The State appeals, contending that the loud noise emanating from defendant's truck at 3 a.m. provided the officer with a sufficient basis to make an investigatory stop.

This case comes to us in an unusual posture. While the defendant has the burden of proof on a motion to suppress evidence to establish that, in the instant case, there was no factual basis for a reasonable suspicion that defendant had committed or was committing a crime, the State presented the only case. (*People v. Neal* (1985), 109 Ill. 2d 216, 486 N.E.2d 898.) Defendant presented no case. The State called Officer DeWitt, who stopped defendant, and Officer Cannon, who came upon the scene subsequent to the stop. The defense called no witnesses. However, Officer DeWitt's testimony, on cross-examination by defense counsel, adduced relevant evidence supporting defendant's motion. The trial court could have concluded that the cross-examination of Officer DeWitt established a *prima facie* showing that the facts known to the police did not establish an articulable basis for a reasonable belief that defendant had committed a felony or misdemeanor sufficient to authorize an investigatory stop. (See Ill. Rev. Stat. 1985, ch. 38, par. 107—14.) The record discloses the following question and answer by defense counsel and Officer DeWitt respectively:

"Q. What laws did you observe Mr. Houlihan break in your presence?

A. None."

The record also discloses the following testimony by Officer DeWitt:

"As I was approaching that [*sic*], I saw the headlights of a vehicle coming towards me, and I heard a loud noise. The best I can describe it is similar to a snowplow on dry pavement.

\* \* \*

Well, the vehicle drove past me. I was somewhat blinded with the headlights, but I could tell there was something underneath the front of the truck. I then turned around in the nearest driveway and began to follow the truck and try to catch up to it."

Finally, the record discloses the following from the State's final argument:

"I think looking at it from the officer's point of view, traveling at that hour of the morning, in a residential area, what else is he to do at that point then [sic] to make some sort of investigatory stop—either some sort of equipment—possible equipment violation or for whatever could have been underneath that truck."

The trial court then concluded:

"There are two problems here—two issues, rather. The grounds [sic] for the stop and then whether or not after the stop there was probable cause to arrest the defendant for driving under the influence after the stop.

As to the stop, the State mentions the garbage can under the truck, but the key—the problem I saw initially, and the problem I still see, is that the officer's testimony was that he didn't see that garbage can. In fact, he didn't see anything when the car passed him. He heard a noise, and he stopped the car because he heard the noise. That's the way the testimony came out. Everything about the garbage can comes out after the stop.

I have reread McGowan, and I think McGowan clearly says there has to be—that it can be less than probable cause to make a stop, but there still has to be some specific and articulable facts before the officer can make that stop. I think the way the testimony came out, I do not think there were articulable and specific facts. In this case, I think the facts here fall short of the McGowen [sic] standard."

The reference to "McGowan" is presumably to *People v. McGowan* (1977), 45 Ill. App. 3d 61, 359 N.E.2d 220 (stop and brief questioning justified where defendant and companion emerged at 12:50 a.m. from between a building and a vacant lot in an industrial, high-crime area). The case has not been discussed, however, by the parties on appeal.

We note that the trial court appears to have misapprehended Officer DeWitt's testimony as quoted earlier. In addition to hearing the loud noise, as noted by the court, Officer DeWitt "could tell there

was something underneath the front of the truck." While it is true that he did not observe initially that the "something" was a garbage can, nonetheless, he both heard the noise and saw something under the truck. We believe it is important to clarify the record in this regard because the visual observation added substance to what the officer heard. The two observations, in turn, give substance to the State's argument below that the officer had articulable facts to form a reasonable belief that the driver was committing a "[p]ossible equipment violation." The State's argument, perhaps, lacked force and conviction because of the officer's acknowledgement that no laws were broken in his presence and because of the failure of the State to cite either an ordinance or statute; nevertheless, we believe the judgment of the trial court was manifestly erroneous.

■■ ■ The question presented by this appeal is whether a police officer may make an investigatory stop of a vehicle where he hears a loud noise emanating from it at 3 a.m. in a residential area and observes something under the front of the vehicle as it passes him going in the opposite direction. An officer may make a valid investigatory stop absent probable cause to arrest, provided the officer's decision is based on specific and articulable facts and reasonable inferences therefrom which warrant the investigative intrusion. (*Terry v. Ohio* (1968), 392 U.S. 1, 20, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880; *People v. Moffitt* (1985), 138 Ill. App. 3d 106, 111, 485 N.E.2d 513; Ill. Rev. Stat. 1985, ch. 38, par. 107—14.) An objective standard is used: whether the facts available to the officer warrant a person of reasonable caution to believe that the action which the officer took was appropriate. A mere suspicion or hunch is insufficient. (*Moffitt*, 138 Ill. App. 3d 106, 485 N.E.2d 513; *People v. Vena* (1984), 122 Ill. App. 3d 154, 160, 460 N.E.2d 886.) Thus, an officer may stop a vehicle if he reasonably infers from the circumstances that an occupant has committed, or is about to commit, an offense. (*People v. Walter* (1985), 133 Ill. App. 3d 550, 551, 479 N.E.2d 12; *People v. Patterson* (1980), 88 Ill. App. 3d 144, 146, 410 N.E.2d 223.) Since there is no uniform rule to determine when a reasonable suspicion exists, each case must be decided on its own facts. (*People v. Vena* (1984), 122 Ill. App. 3d 154, 160, 460 N.E.2d 886; *People v. DeLisle* (1982), 104 Ill. App. 3d 297, 299, 432 N.E.2d 954.) A reviewing court will not disturb a trial court's determination at a suppression hearing unless it is manifestly erroneous. (*People v. Stout* (1985), 106 Ill. 2d 77, 86, 477 N.E.2d 498.) Such a judgment will not be found to be against the manifest weight of the evidence unless it appears from the record that the opposite conclusion is clearly evident. *People v. Bafia*

(1983), 112 Ill. App. 3d 710, 712, 445 N.E.2d 878.

■ Generally, a traffic violation provides a sufficient basis for a *Terry* stop. (*People v. Patterson* (1980), 88 Ill. App. 3d 144, 145-46, 410 N.E.2d 223.) The violation may relate to the condition of the vehicle itself. (*People v. Flowers* (1982), 111 Ill. App. 3d 348, 351, 444 N.E.2d 242; *People v. Estrada* (1979), 68 Ill. App. 3d 272, 275, 386 N.E.2d 128, *cert. denied* (1979), 444 U.S. 968, 62 L. Ed. 2d 382, 100 S. Ct. 459; see also *People v. Dillon* (1984), 102 Ill. 2d 522, 523, 468 N.E.2d 964.) In particular, the police may stop a vehicle for an equipment violation. See *People v. Dillon* (1984), 102 Ill. 2d 522, 468 N.E.2d 964; see also *People v. Bowen* (1987), 164 Ill. App. 3d 164, 517 N.E.2d 608; *People v. Little* (1987), 162 Ill. App. 3d 6, 515 N.E.2d 846; *People v. Sass* (1986), 144 Ill. App. 3d 163, 494 N.E.2d 745.

The limited stop under the facts articulated by Officer DeWitt pursuant to section 107—14 of the Code of Criminal Procedure (Ill. Rev. Stat. 1985, ch. 38, par. 107—14) serves a legitimate governmental interest and was not unreasonable. The State contends that section 12—101(a) of the Illinois Vehicle Code is a basis for the stop. Section 12—101(a) in part states: "It is unlawful for any person to drive *** any vehicle *** which is in such unsafe condition as to endanger any person or property." (Ill. Rev. Stat. 1985, ch. 95½, par. 12—101(a).) That section alone would be a sufficient basis for an investigative stop. Also, section 12—602 of the Illinois Vehicle Code provides: "Every motor vehicle driven or operated upon the highways of this State shall at all times be equipped with an adequate muffler or exhaust system in constant operation and properly maintained to prevent any excessive or unusual noise." (Ill. Rev. Stat. 1985, ch. 95½, par. 12—602.) Either of these sections was possibly violated by defendant's activity from the standpoint of a person of reasonable caution. Furthermore, it is not uncommon for mufflers to drag, and the dragging may have been damaging to the roadway in violation of section 11—312 of the Illinois Vehicle Code, which provides: "It shall be unlawful for any person to willfully injure or damage any public highway or street." (Ill. Rev. Stat. 1985, ch. 95½, par. 11—312.) The combination of the noise and the officer's seeing something underneath the front of the truck is enough to authorize an investigatory stop. We believe a police officer would be expected to act, if for no other reason than the safety of the driver and others on the street. As the court in *Terry v. Ohio* observed regarding Officer McFadden's investigatory stop of the defendants in that case:

"It would have been poor police work indeed for an officer of

30 years' experience in the detection of thievery from stores in this same neighborhood to have failed to investigate this behavior further." *Terry*, 392 U.S. at 23, 20 L. Ed. 2d at 907, 88 S. Ct. at 1881.

■ In the hearing on the suppression motion, defense counsel elicited a response of "[n]one" from Officer DeWitt when asked what laws were broken by defendant in the officer's presence. The question and answer suggests that since the officer did not observe a law broken in his presence that he could not have articulable facts to believe that an offense was committed, or that he did not have a subjective belief that defendant was committing a crime. However, an officer need not actually witness a violation in order to establish reasonable ground for a traffic stop. See, *e.g.*, *People v. Moffitt* (1985), 138 Ill. App. 3d 106, 485 N.E.2d 513 (officer's observation of erratic driving plus anonymous truck driver's tip provided reasonable ground to investigate); *People v. Loucks* (1985), 135 Ill. App. 3d 530, 533, 481 N.E.2d 1086 (observation of defendant's car weaving in its own lane gave officer reasonable ground to suspect that defendant was intoxicated); *People v. Runnion* (1986), 150 Ill. App. 3d 879, 502 N.E.2d 439 (investigatory stop authorized even though officer did not witness traffic violation nor did he believe crime had been committed but where defendant's car had been seen in high-crime area after business hours); *People v. McGowan* (1977), 45 Ill. App. 3d 61, 359 N.E. 2d 220.

Professor LaFave has treated the question presented by this appeal. (W. LaFave, Search & Seizure §9.2(b), at 355-57 (2d ed. 1987)). He states:

"Not at all inconsistent with *Dunbar* in light of the analysis just quoted, is *State v. Oxley* [(1985), 127 N.H. 407, 503 A.2d 756], upholding the temporary seizure of a vehicle and its occupants because the furniture being carried in the back of the car appeared to be inadequately secured. As the court explained, in such circumstances it was proper for the police to stop the vehicle so as 'to ensure that the furniture did not fall onto the public highways and endanger other drivers.'" (W. LaFave, Search & Seizure §9.2(b), at 356-57 (2d ed. 1987).)

As characterized by Professor LaFave, the facts in *Oxley* bear a strong resemblance to those in the instant case. However, it should be observed that the court also found the stop justified by the fact of previous burglaries in the area, a fact not present in the instant case. See *State v. Oxley* (1985), 127 N.H. 407, 503 A.2d 756.

Finally, again bearing on the central issue of this case, Professor

LaFave states:

> "Certainly it is clear beyond question that the *'reasonable* belief' required for arrest is not to be determined by what the arresting officer did or did not believe, but rather by whether the available facts would 'warrant a man of reasonable caution in the belief' that the person arrested had committed an offense. This being so, how can it seriously be contended that the requirement of *'reasonable* suspicion' grants police carte blanche to detain 'on a purely subjective reaction'? *** This test, as is the case with the legal standard for arrest, is *purely* objective and thus there is no requirement that an actual suspicion by the officer be shown." (Emphasis in original.) W. La-Fave, Search & Seizure §9.3(a), at 424-25 (2d ed. 1987).

■ We conclude that the officer's investigatory stop was based upon the articulable facts of the loud noise and something under the truck. It was entirely reasonable for him to pursue and stop the vehicle even though he did not observe a crime being committed where the State was able to specify statutes which were possibly violated by defendant's conduct. *Cf. People v. James* (1976), 44 Ill. App. 3d 300, 358 N.E.2d 88.

Defendant relies on the holding of *People v. Collins* (1987), 154 Ill. App. 3d 149, 506 N.E.2d 963, for support for his contention that the police must have an articulable and reasonable suspicion that the driver is subject to seizure for violation of the law (see *Delaware v. Prouse* (1979), 440 U.S. 648, 59 L. Ed. 2d 660, 99 S. Ct. 1391). *Collins* correctly states the law but is factually distinguishable from the instant case. There the trial court found that the State failed to rebut defendant's assertion that he crossed over into the oncoming traffic lane so as to avoid a parked car. The officer had testified that he didn't know if there was or was not a parked car in defendant's lane of traffic. Thus, the State was left with no articulable facts to support a reasonable suspicion of the commission of an offense. (See *People v. Collins* (1987), 154 Ill. App. 3d 149, 151, 506 N.E.2d 963.) In the instant case, the police officer's articulable facts stand unrebutted, and the trial court's ruling was based upon a legal analysis and not upon a question of credibility as in *Collins.*

Defendant also relies upon *People v. James* (1976), 44 Ill. App. 3d 300, 358 N.E.2d 88, for the proposition that where, as here, the officer was unable to specify any section of the Illinois Vehicle Code which defendant violated, the granting of the motion to suppress should be affirmed. However, in *James*, this court inferred that it was the burden of the State, as opposed to that of the police officer,

to specify the statute or ordinance violated. (44 Ill. App. 3d 300, 358 N.E.2d 88.) Here the State has, belatedly, met that burden, and we conclude that the holding of *James* is distinguishable and does not compel the same result in the instant case. In fact, the court quoted with approval the following language which supports our holding:

> " '[T]he factual basis required to support a stop for a "routine traffic check" is minimal. An actual violation of the Vehicle and Traffic Law need not be detectable. For example, an automobile in a general state of dilapidation might properly arouse suspicion of *equipment violations*. All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion" (*Terry v. Ohio*, 392 U.S. 1, 21, [20 L. Ed. 2d 889], 88 S. Ct. 1868, 1880, *supra*).' *People v. Ingle*, 36 N.Y.2d 413, 420, 330 N.E.2d 39, 44 (1975)." (Emphasis added.) *People v. James* (1976), 44 Ill. App. 3d 300, 304, 358 N.E.2d 88, 92.

In *People v. Deppert* (1980), 83 Ill. App. 3d 375, 403 N.E.2d 1279, a case also relied upon by defendant, the appellate court reversed the denial of a motion to suppress where the only reasons for stopping the defendant were to see if he needed assistance, was lost or was looking for someone. No violation of law was suggested by the officer or by the State as a basis for the stop. For this reason, the case is distinguishable from the case at bar.

We reverse the judgment of the circuit court of Du Page County and remand the cause for further proceedings.

Reversed and remanded.

INGLIS and REINHARD, JJ., concur.