THE VILLAGE OF LINCOLNSHIRE, Plaintiff-Appellee, v. JAMES DiSPIRITO, JR., Defendant-Appellant.

Second District   No. 2—89—0524

Opinion filed March 27, 1990.

Stephen M. Komie, of Komie & Associates, of Chicago, for appellant.

Douglas E. Zeit, William G. Rosing, and Suzanne A. Lindsay, all of Rosing, Applehans & Smith, Ltd., of Waukegan, for appellee.

JUSTICE DUNN delivered the opinion of the court:

The defendant, James DiSpirito, Jr., was charged with, *inter alia*, the offenses of driving under the influence of alcohol (DUI) and driving with a blood-alcohol concentration of greater than .10 in violation of sections 10—8—2A1 and 10—8—2A2 of the municipal code of the Village of Lincolnshire (the Village) (Lincolnshire, Ill., Municipal Code ch. 10, pars. 10—8—2(A)(1), (A)(2)). The arrest occurred after the defendant's automobile was stopped by a Village police officer. The trial court denied the defendant's motion to suppress evidence and quash arrest, and the defendant was subsequently convicted of both offenses after a bench trial. The defendant now appeals, claiming that his motion to suppress evidence and quash arrest should have been granted because the stop of his automobile was conducted without an

articulable suspicion that the defendant had engaged in criminal activity. We affirm.

The following facts were adduced at the hearing on the defendant's motion to suppress evidence and quash arrest. The stop of the defendant's automobile took place on January 1, 1988, at approximately 7:15 p.m. Officer Gregory Duffey was northbound on Route 21, a four-lane roadway, when he first saw the defendant, who was driving south on Route 21. At this location, Route 21 is intersected from the west by Old Half Day Road at a tee intersection. Old Half Day Road proceeds west from the intersection with Route 21 and curves in a southwesterly direction. The defendant turned his vehicle right from Route 21 and headed west on Old Half Day Road.

Officer Duffey testified that, in making a right turn to head west on Old Half Day Road, the defendant drove his car completely into the eastbound lane of Old Half Day Road for about 100 feet until he drifted back into the westbound lane. Officer Duffey at this time observed that the rear window of the defendant's car was completely covered with snow and ice. According to Officer Duffey, although there was snow covering the grassy areas adjacent to the roadway, the road itself was only wet, and there was no snow on the road. Officer Duffey stated that "because there was no other traffic," he then turned his vehicle left onto Old Half Day Road and followed the defendant's automobile.

The officer continued to follow the defendant's vehicle for about one-third of a mile until both cars stopped at a red light at the intersection of Old Half Day Road and Route 22. At the intersection, Officer Duffey radioed the police station and informed the dispatcher that he would stop the defendant's car as soon as it passed through the intersection. The dispatcher informed Duffey that there were no outstanding warrants for the defendant or his automobile. After the defendant turned right onto Route 22 Officer Duffey activated his mars lights, and the defendant pulled his car over to the side of the road. The only reason he stopped the defendant's vehicle, Duffey testified, was because of the defendant's wide right turn onto Old Half Day Road and because of the snow and ice covering the rear window.

Officer Duffey approached the defendant's vehicle and told the defendant the reasons why his car had been stopped. The defendant then exited the car so that he might remove the snow and ice from the rear window. Officer Duffey testified that the defendant stumbled when he exited the car, and the officer also smelled the odor of alcohol emanating from the defendant. The defendant was then asked to perform certain field sobriety tests, which he failed, and he was then

arrested for DUI. Subsequently, citations were also issued to the defendant for an improper right turn at an intersection and driving with an obstructed rear window (Lincolnshire, Ill., Municipal Code ch. 10, par. 10—7B—5(B)) and also for the failure to wear a seat belt (Ill. Rev. Stat. 1987, ch. 95½, par. 12—603). After consenting to and failing a breathalyzer test, the defendant was also charged with driving with a blood-alcohol concentration greater than .10.

The defendant testified that his rear window was partially, but not totally, covered with snow and ice. The defendant admitted that he made a wide right turn onto Old Half Day Road, but he stated that the left front wheel of his car crossed only about one foot over the center line for about five seconds. The reason he drove over the center line, the defendant testified, was that he saw a glare on the road which he perceived to be a patch of ice or snow.

The trial court denied the defendant's motion to suppress evidence and quash arrest. In doing so, the court did not make an explicit finding as to which witness' testimony it believed regarding the dimensions of the defendant's wide right turn and whether the turn was executed to avoid a patch of ice or snow. The court ruled that the propriety of the officer's decision to stop the car depended on the officer's observations at the time and it did not matter whether the defendant's wide turn was actually made to avoid a patch of ice or snow in the right lane. The court found that the officer's actions constituted a valid investigatory stop pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.

The defendant filed a motion to reconsider, and the court requested and received memoranda from both parties on the propriety of the investigatory stop. In ruling on the motion, the court stated that the "officer does not have to determine whether or not there is ice on the roadway to have a reasonable articulable suspicion that a law is being violated, that of executing a right turn not as nearly as practicable to the right side of the roadway." Further, the court stated, the officer had observed snow and ice obstructing the defendant's rear window. While the court held that this "of itself is not a violation of the law," this factor, combined with the wide right turn, justified the officer's decision to stop the defendant's vehicle. Accordingly, the court denied the defendant's motion to reconsider.

The cause then proceeded to a bench trial. The court found the defendant guilty of both DUI and driving with a blood-alcohol concentration greater than .10, but the defendant was found not guilty of the charges relating to the improper right turn, the obstructed window, and the failure to wear a seat belt.

The defendant now appeals his conviction, arguing that the trial court erred when it denied his motion to suppress evidence and quash arrest. On appeal, the defendant contends that, because he had violated no traffic laws, there were no specific and articulable facts justifying Officer Duffey's stop of the defendant's vehicle. It is important to note that although the defendant challenges the propriety of the stop, he does not argue that there was no basis for his arrest if, in fact, the investigatory stop was proper. Thus, the question of whether there was probable cause to arrest the defendant for the drunk-driving offenses is not at issue on appeal.

██ A reviewing court will not reverse the trial court's finding on a motion to suppress evidence unless the finding is manifestly erroneous. (*Village of Gurnee v. Gross* (1988), 174 Ill. App. 3d 66, 69, 528 N.E.2d 411, 413.) An officer may make a valid investigatory stop, absent probable cause for an arrest, provided the officer's decision is based on specific and articulable facts and reasonable inferences therefrom which warrant the investigative intrusion. (*Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880.) A mere suspicion or hunch is insufficient. (*People v. Houlihan* (1988), 167 Ill. App. 3d 638, 642, 521 N.E.2d 277, 280.) The standard by which such stops are evaluated is not the same as the more exacting requirement of probable cause to arrest or search. In order to make a valid investigatory stop, a police officer must have knowledge of specific, articulable facts which, when combined with the rational inferences from them, create a reasonable suspicion that the person in question has committed or is about to commit a crime. (*People v. Repp* (1988), 165 Ill. App. 3d 90, 94, 518 N.E.2d 750, 753-54.) Courts will review the officer's decision using an objective standard: whether the facts available to the officer warrant a person of reasonable caution to believe that the action which the officer took was appropriate. (*Houlihan*, 167 Ill. App. 3d at 642, 521 N.E.2d at 280.) Generally, a traffic violation provides a sufficient basis for a *Terry* stop of an automobile, although an officer does not necessarily have to witness such a violation in order to establish reasonable ground for a stop. *Houlihan*, 167 Ill. App. 3d at 643-44, 521 N.E.2d at 281.

The defendant argues that his conduct, as observed by the officer, did not evidence any traffic violations and that, therefore, the officer had no reason to suspect that the defendant had committed any crime. The defendant concedes that Illinois law requires right-hand turns to be made "as close as practical to the right-hand curb or edge of the roadway." (Ill. Rev. Stat. 1987, ch. 95½, par. 11—801(a)(1).) Furthermore, vehicles are generally required to drive on the right-

hand side of the center line on the roadway. (Ill. Rev. Stat. 1987, ch. 95½, par. 11—701(a).) There are, however, exceptions to this requirement. A vehicle may drive to the left of the center line if "an obstruction exists making it necessary" to do so, although such a maneuver must be done without creating a hazard to oncoming motorists. (Ill. Rev. Stat. 1987, ch. 95½, par. 11—701(a)(2).) It is also a violation of Illinois law to drive with an obstructed rear window, but only if the vehicle is not equipped with effective rearview mirrors. *People v. La-Grone* (1984), 124 Ill. App. 3d 301, 303, 464 N.E.2d 712, 714.

The defendant argues that he was confronted with an obstacle, a patch of ice or snow, which made it necessary for him to cross over the center line for a brief moment. The defendant also argues that, since his car was equipped with rearview mirrors, it was not a violation of the law to have his rear window covered with ice and snow. Thus, the defendant argues, his driving did not evidence any traffic violations upon which Officer Duffey could premise a valid investigatory stop of the vehicle.

■ We disagree. It is not necessary for an officer making an investigatory stop of a vehicle to have in hand sufficient evidence to convict the driver. (See *People v. Bafia* (1983), 112 Ill. App. 3d 710, 716, 445 N.E.2d 878, 882.) Here, the defendant's motivation for driving around the patch of ice was a plausible, and ultimately successful, defense to the charge of leaving his proper lane. Evaluation of the officer's conduct in stopping the vehicle, however, cannot be based on facts pertaining to the defendant's motivation which are made known later; the inquiry must focus on "the facts available to the officer" at the time. (*Houlihan*, 167 Ill. App. 3d at 642, 521 N.E.2d at 280.) The officer's testimony shows that he did not see any ice or snow on the road the night of the incident. He merely saw the defendant's car drive out of the proper lane while executing a right-hand turn. This provided the officer with sufficiently specific and articulable facts from which a reasonable person might conclude that a law was being broken. Therefore, the investigatory stop was proper under the facts of this case. We need not address the question of whether the defendant's obstructed rear window also provided a sufficient basis for an investigatory stop.

■ The defendant refers us to several cases which, he contends, support a conclusion different from the one we have reached in this case. In *People v. Collins* (1987), 154 Ill. App. 3d 149, 506 N.E.2d 963, the police officer saw the defendant's car cross the center line, but he could not deny that the defendant swerved to avoid a parked car. The court held that this evidence was insufficient to show that

the defendant created any hazard and, therefore, it did not provide a sufficient basis for the stop. (*Collins*, 154 Ill. App. 3d at 151, 506 N.E.2d at 965.) In *People v. Houlihan*, we held that *Collins* correctly stated the law regarding investigatory stops, but we found that *Collins* was factually inapposite in that case. (*Houlihan*, 167 Ill. App. 3d at 645, 521 N.E.2d at 282.) We now note that the analysis in *Collins* may also be flawed. The court in *Collins* relied on the fact that the "defendant gave an unrefuted, reasonable explanation for his safe usage of the oncoming lane." (*Collins*, 154 Ill. App. 3d at 151, 506 N.E.2d at 965.) We believe that this approach departs from the fundamental notion that the reasonableness of a police officer's investigatory stop must be based on "the facts available to the officer." (*Houlihan*, 167 Ill. App. 3d at 642, 521 N.E.2d at 280.) The fact that the defendant may later demonstrate a valid reason for what reasonably appears to be illegal conduct may affect his ultimate liability for that offense, but it should not affect the validity of the police officer's investigatory stop.

Similarly, the defendant cites *People v. Decker* (1989), 181 Ill. App. 3d 427, 430, 537 N.E.2d 386, 388, for the proposition that a "nonhazardous, momentary crossing of the center line [is] not reasonable grounds for a stop." Again, we do not find persuasive the analysis set forth in this case. First, this statement of the law is incomplete. A motorist may cross the center line so long as he does not create a hazard to oncoming drivers, but only if "an obstruction exists making it necessary" to do so. (Ill. Rev. Stat. 1987, ch. 95½, par. 11–701(a)(2).) Second, the court in *Decker* mistakenly evaluated the reasonableness of the police officer's actions on the basis of facts which may not have been reasonably perceptible to him at the time. The court's approach again allowed the defendant to make an after-the-fact explanation of what appeared, on its face, to be illegal conduct. Third, the result in *Decker* stems at least as much from the trial court's resolution of conflicting testimony as it does from the questionable legal proposition cited above.

■ Finally, the defendant argues that an officer's authority to investigate a traffic violation may not serve as a subterfuge to obtain other evidence based on suspicion. (See *People v. Penny* (1989), 188 Ill. App. 3d 499, 502, 544 N.E.2d 1015, 1017.) The defendant relies on a portion of Officer Duffey's testimony to show that the officer chose to follow the defendant's vehicle merely "because there was no other traffic." A closer examination of the officer's testimony, however, reveals that he did not follow the defendant because his automobile was the only one on the road; instead, the officer's testimony was only

that he immediately *turned his vehicle left* to follow the defendant "because there was no other traffic" and a turn was possible at that time. Furthermore, as we have shown, the officer did have a valid reason to stop the defendant's vehicle. The defendant has not here argued that, following the stop, there was insufficient reason for the officer to arrest the defendant because of his intoxication. Because the stop was valid, and because the trial court determined there was probable cause for an arrest based on drunken driving, we find no suggestion that the officer improperly relied on a pretext to support an investigation based on mere suspicion. See *People v. Fenner* (1989), 191 Ill. App. 3d 801, 807, 548 N.E.2d 147, 151-52.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

UNVERZAGT, P.J., and McLAREN, J., concur.