# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *City of Highland Park v. Kane*, 2013 IL App (2d) 120788

---

| | |
|---|---|
| Appellate Court Caption | THE CITY OF HIGHLAND PARK, Plaintiff-Appellant, v. JACLYN KANE, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-12-0788 |
| Modified opinion filed | June 21, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for driving under the influence of alcohol, where the arresting officer testified that his sole reason for stopping defendant was that the light on her rear license plate was not working, the trial court's decision to grant defendant's petition to rescind the statutory summary suspension of her driving privileges and her motion to quash her arrest and suppress evidence due to the conflicting evidence as to whether the light was working was reversed, since the record disclosed that defendant also failed to signal a turn she made just before she stopped her vehicle, and that violation was a proper basis for the stop, regardless of the fact that the officer did not cite that violation as the reason for the stop. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 12-DT-337; the Hon. Joseph R. Waldeck, Judge, presiding. |
| Judgment | Reversed. |

Counsel on Appeal      Lawrence R. LaLuzerne, of Smith & LaLuzerne, Ltd., of Waukegan, for appellant.

Gregory C. Nikitas, of Mahaffee & Nikitas, P.C., of Waukegan, for appellee.

Panel      JUSTICE JORGENSEN delivered the judgment of the court, with opinion.

Presiding Justice Burke and Justice Hudson concurred in the judgment and opinion.

## OPINION

¶ 1      Defendant, Jaclyn Kane, was stopped after Officer Bryan Merkel, who worked for the City of Highland Park, saw that the rear license plate light on the car she was driving was not working (see 625 ILCS 5/12-201(c) (West 2010)), that she was "bouncing around a little bit in [her] lane" (see 625 ILCS 5/11-709(a) (West 2010)), and that she failed to signal a turn (625 ILCS 5/11-804(a) (West 2010)). After defendant was stopped, Officer Merkel approached her car and detected the smell of alcohol. Further tests conducted at the scene revealed that defendant was driving while under the influence of alcohol (DUI) (see 625 ILCS 5/11-501(a)(1), (a)(2) (West 2010)). Defendant was arrested and thereafter her driving privileges were suspended. She petitioned to rescind that suspension and moved to quash her arrest and suppress the evidence of intoxication. The trial court granted both requests. Although the City appealed both orders, it moved in this court to dismiss the appeal of the order granting defendant's motion to quash and suppress. We granted that motion to dismiss. *City of Highland Park v. Kane*, No. 2-12-0789 (Dec. 12, 2012) (minute order). Thus at issue in this appeal is whether for purposes of defendant's petition to rescind, Officer Merkel had a proper basis to stop defendant. For the reasons that follow, we believe that he did. Thus, we reverse.

¶ 2      The facts relevant to resolving this appeal are as follows. At the hearing on defendant's petition to rescind, Officer Merkel testified that he was in his squad car on February 10, 2012, and was positioned on the Deerfield Road overpass observing southbound traffic on Route 41, which was 30 to 40 feet away. While at this location, the officer saw defendant driving on Route 41. The car defendant was driving did not have a light illuminating the rear license plate. Thus, Officer Merkel left his position on the overpass and followed defendant's car.

¶ 3      Once Officer Merkel positioned his squad car behind defendant's car, he saw that "[the] vehicle was having difficulty operating on the roadway." Officer Merkel clarified that "th[is]

difficulty" was related to defendant "weaving within the lane." However, defendant's car "never went out of its lane," and the few cars on the roadway at that time "never had to take any evasive action relative to the vehicle operated by [defendant]."

¶ 4    Eventually, Officer Merkel effectuated a stop of defendant's car. At the hearing, Officer Merkel was asked, "And the basis for the traffic stop was that you felt that there was not illumination of the license plate[,] correct?" Officer Merkel responded, "Correct." Officer Merkel then stated that he was able to observe that "the license plate light was not illuminated" when he was following defendant and when he approached her car after the stop. Officer Merkel asserted that "[he] did not issue any tickets for illegal lane usage or speeding or anything like that," but, according to the common-law record, Officer Merkel did not issue a ticket related to the rear license plate light either. The only tickets issued by the officer to defendant were for DUI.

¶ 5    A video of the traffic stop, which Officer Merkel recorded from his squad car beginning at 2:30 a.m., revealed that, when Officer Merkel was following defendant's car, defendant did not activate her turn signal as she exited Route 41 and proceeded onto the exit ramp toward Skokie Valley Road. While driving up the ramp, defendant's car swerved to the right side of the road, touching or crossing the fog line.[1] Officer Merkel activated his Mars lights, defendant stopped her car, and the officer approached defendant's car, asking for her driver's license and registration. At that point, defendant asked Officer Merkel if she was stopped because she was speeding. In response, Officer Merkel said, "No. The reason I'm stopping you is your license plate light is out and you're bouncing around a little bit in your lane." Given the light coming from the headlights of Officer Merkel's squad car, the video does not make clear whether the rear license plate light on defendant's car was operational.

¶ 6    Defendant testified that she had no knowledge of her rear license plate light being off on the night she was stopped, but that she did not confront the officer about it because "[she did not] have an opportunity to dispute that as [it was] happening." Defendant also asserted that, while she was outside of the car after the stop, she "never turned back [to] look[ ] at the license plate light," because she was "concentrating on what the officer said." According to the video, defendant did turn to look at the light while she was standing at the back of the car, and, when she did so, she asked the officer "You gonna give me a 'got a light out'?"

¶ 7    Defendant testified that, a week after the stop, she took photographs of her rear license plate with the light above it on. These photographs, which were taken at night, at a close distance, and were admitted into evidence, show a dim light above the license plate of defendant's car. Defendant testified that she "never made any changes to the license plate light" from the time of the stop until she took the pictures.

¶ 8    The trial court granted defendant's petition to rescind the statutory summary suspension of her driving privileges. In so ruling, the court stated:

"[A]fter having viewed the video, although there may have been another violation that

---

[1]The video shows defendant driving on the fog line, and, as the car turns and Officer Merkel follows, the right-hand side of defendant's car is not visible, as it is outside of the video recorder's scope.

was–that was viewed by the Court of the video–on the video of the defendant's driving specifically perhaps failure to use a turn signal, weaving perhaps within the lane, based on the fact that the officer testified that the sole basis for stopping the vehicle was the no rear registration light, the Court found on the video that the registration light–I'm sorry, that the license plate was clear, unobstructed. I would have to say that the officer's view of that was at least 50 feet, if not more, and the defendant having testified and entered into evidence [the pictures of her rear license plate light] that they weren't–I'm going to therefore grant the motion."

At that time, the City orally urged the court to reconsider, arguing that the other traffic violations gave the officer reason to stop defendant, and the court commented:

"Well, the officer's reason to stop the vehicle as he said when he viewed from the overhead pass was solely and only at the time that he made the stop was the rear registration light issue. So on that basis, I'm going to have to grant the motion and the petition."

¶ 9 Subsequently, the City filed a written motion to reconsider, arguing that the officer observed other traffic violations besides a nonfunctional rear license plate light. At the hearing, the City claimed that, based on the fact that the video showed that defendant did not use a turn signal when she exited Route 41, the stop of defendant's car was proper. The trial court denied the motion to reconsider, noting that "[t]he only reason [the officer] said 'I made the stop' was for that registration light." The court went on to state that "when I have to determine the credibility, that that was not a fact that I found to be true." The City questioned the court about its ruling, and the court replied, "There's no question on the tape that she didn't use a turn signal." The court then asserted, "But that's not what the officer testified was his basis for the stop of the defendant."

¶ 10 At issue in this appeal is whether the stop of defendant was proper. In addressing that issue, we note that "[v]ehicle stops are subject to the fourth amendment's reasonableness requirement." *People v. Hackett*, 2012 IL 111781, ¶ 20. Generally, a stop of a vehicle is considered reasonable if the officer has probable cause to believe that a traffic violation was committed.[2] *Id.* Probable cause is not proof beyond a reasonable doubt that an offense occurred. *People v. Davis*, 2012 IL App (2d) 110581, ¶ 50. Rather, probable cause exists when the arresting officer is aware of facts and circumstances that would lead a reasonably cautious person to conclude that the defendant committed a crime. *People v. Wear*, 229 Ill. 2d 545, 563 (2008). Thus, "the existence of probable cause depends upon the totality of the circumstances at the time of the arrest." *Id.* at 564.

---

[2]In *Hackett*, our supreme court determined that both the probable-cause standard and the less exacting reasonable-and-articulable-suspicion standard might apply in suppression cases involving traffic stops. *Id.* However, the court observed that "[t]he distinction between these two standards may or may not be relevant, depending upon the facts of the case under consideration and the [traffic offense] at issue." *Id.* Given the facts of this case and the offenses involved, we determine that the distinction is irrelevant. Because here the officer knew all the pertinent facts, he could not have had a reasonable suspicion without also having probable cause. Thus, we will consider whether the officer had probable cause.

¶ 11    In reviewing the trial court's decision on defendant's petition to rescind, we apply a two-part standard of review. See *id.* at 560-61. First, we consider the trial court's factual findings and credibility determinations. *People v. Lurz*, 379 Ill. App. 3d 958, 965 (2008). "[W]e must accord great deference to the trial court's factual findings and credibility assessments and will reverse those findings only if they are against the manifest weight of the evidence." *Id.* Factual findings or credibility determinations are "against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *People v. Tate*, 367 Ill. App. 3d 109, 113 (2006). Second, we review the trial court's ultimate legal ruling. *Wear*, 229 Ill. 2d at 562. In reviewing the trial court's legal ruling, we are "free to undertake [our] own assessment of the facts in relation to the issues and may draw [our] own conclusions when deciding what relief should be granted." *Hackett*, 2012 IL 111781, ¶ 18. Accordingly, "[the] trial court's ultimate legal ruling as to whether [rescission] is warranted is subject to *de novo* review." *Id.*

¶ 12    Here, the trial court found that the only basis that Officer Merkel gave for the traffic stop was his belief that the rear license plate light on defendant's car was not working. The record rebuts the court's finding. The record, including the video, explicitly indicates that the officer gave two reasons for why he stopped defendant: (1) failing to have an operational rear license plate light and (2) "bouncing around a little bit in [her] lane" of traffic.

¶ 13    Concerning the rear license plate light, the trial court found that the light was working. Although there are several things that suggest that the light was not working properly according to statutory specification, including the pictures defendant submitted and defendant's failure to dispute the officer when she turned to look at the light during the traffic stop and asked the officer if he was going to ticket her for the light offense, we cannot conclude that the trial court's finding on this issue was against the manifest weight of the evidence. That is, we cannot say that it is clearly evident that the light did not sufficiently illuminate the plate.

¶ 14    However, even if the rear license plate light was not a proper basis for the officer to stop defendant, that was not the only reason the officer gave. Rather, the officer indicated, and the video reveals, that he also stopped defendant because she was "bouncing around *** in [her] lane." This certainly gave the officer a proper basis to stop defendant. See *People v. Greco*, 336 Ill. App. 3d 253, 257 (2003) ("The well-accepted rule in this state is that erratic driving, including weaving within a single lane, is sufficient to justify a traffic stop."); see also *Hackett*, 2012 IL 111781, ¶ 28.

¶ 15    All of that said, even if these two violations did not provide the officer with a valid basis for the stop, another violation did. Specifically, it is undisputed that defendant failed to signal her turn when she left Route 41 at Skokie Valley Road. Although Officer Merkel did not indicate that this was one of his reasons for stopping defendant, that fact does not matter. In analyzing whether a stop was proper, a court is not limited to bases cited by the officer for effectuating the stop (*Whren v. United States*, 517 U.S. 806, 813 (1996)), because a totality-of-the-circumstances approach is used to objectively analyze whether the stop was reasonable (*People v. Ledesma*, 206 Ill. 2d 571, 583 (2003), *overruled on other grounds by People v. Pitman*, 211 Ill. 2d 502, 513 (2004)). See also *Wear*, 229 Ill. 2d at 566 (" 'The officer's subjective motivation is irrelevant.' " (quoting *Brigham City, Utah v. Stuart*, 547 U.S. 398,

404 (2006))). Here, when defendant was exiting onto Skokie Valley Road, there was a proper basis to stop her, as she clearly violated section 11-804(a) of the Illinois Vehicle Code by failing to signal her turn. 625 ILCS 5/11-804(a) (West 2010).

¶ 16    Illustrative of this point is *People v. Houlihan*, 167 Ill. App. 3d 638 (1988). There, an officer was patrolling a residential area in the early morning when he heard a loud noise coming from a truck driven by the defendant. *Id.* at 639. Although the officer testified that he did not observe the defendant break any laws, the officer nevertheless decided to stop the defendant. *Id.* at 639-40. Evidence that the defendant was DUI was subsequently discovered, the defendant was arrested for DUI, and the defendant moved to quash his arrest and suppress the evidence, arguing that the officer lacked a proper basis for the stop. *Id.* at 639.

¶ 17    The trial court granted the motion to quash and suppress, and this court reversed. *Id.* at 641, 643. In doing so, we noted that, although the officer did not indicate that he stopped the defendant because the noise emanating from the defendant's truck suggested that the defendant was driving his truck with an equipment violation, the officer would have been justified in stopping the defendant for that reason. *Id.* at 643-44. In support of that position, we observed that "an officer need not actually witness a violation in order to establish reasonable ground for a traffic stop." *Id.* at 644. Rather, because, like the legal standard for an arrest, which is " '*purely* objective,' " a stop is justified if a reasonable person would believe that a violation of the law was committed, " 'no *** actual suspicion by the officer [needs to be] shown.' " (Emphasis in original.) *Id.* at 645 (quoting 3 Wayne R. LaFave, Search & Seizure § 9.3(a), at 424-25 (2d ed. 1987)).

¶ 18    If, as noted in *Houlihan*, an officer need not witness a violation of the law for that violation to justify a stop, then, as happened here, an officer certainly does not need to articulate that that same violation provided a reason for the stop. Given that the facts presented here are stronger than those presented in *Houlihan*, we must conclude that the stop of defendant was proper. That is, unlike in *Houlihan*, here Officer Merkel indicated that he saw defendant fail to signal her turn from Route 41 onto the exit ramp for Skokie Valley Road; yet, he did not include that violation as a basis to stop defendant. Thus, while it might not have been a *subjective* reason for Officer Merkel to stop defendant, it certainly formed a purely objective one. Accordingly, defendant's failure to signal her turn constituted a valid basis for the stop.

¶ 19    For these reasons, we reverse the judgment of the circuit court of Lake County granting defendant's petition to rescind.


¶ 20    Reversed.