THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MATTHEW C. GERWICK, Defendant-Appellee.

Fourth District   No. 4—92—0078

Opinion filed October 22, 1992.—Rehearing denied November 19, 1992.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Steven Skelton, of Bloomington, for appellee.

JUSTICE McCULLOUGH delivered the opinion of the court:

The State appeals from an order of the circuit court of McLean County granting the petition of defendant Matthew C. Gerwick to rescind the statutory summary suspension of his driver's license. On November 15, 1991, defendant filed his petition alleging he was not properly placed under arrest for an offense defined in section 11—501 of the Illinois Vehicle Code (Code) (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501) and that the arresting officer did not have reasonable grounds to believe that the defendant was driving or in actual physical control of a motor vehicle while under the influence of alcohol and/or other drugs, or a combination thereof. The trial court found:

> "The evidence presented establishes clearly that the arresting officer did not have reasonable suspicion that the defendant was violating the law because the officer knew at the time of the stop that the movement through the 'S' curve was made safely and hence did not violate Ch. 95½, Section 11—709."

The only issue raised on appeal is whether this finding is a proper basis for granting the rescission of the summary suspension and is, therefore, against the manifest weight of the evidence. We reverse.

■■ The parties have prepared and submitted an agreed statement of facts. Although it is referred to as a bystander's report and it recites that it is certified by the trial judge, there is in fact

no certification by the judge on the document, nor has the judge signed it. In the absence of some designation on the document that the judge certified the facts recited therein to be accurate, the document may not be considered a bystander's report. (134 Ill. 2d R. 323(c); see *Feldman v. Munizzo* (1957), 16 Ill. App. 2d 58, 63, 147 N.E.2d 427, 430-31.) However, even without certification, we may accept the parties' agreed statement of facts as a substitution for a report of proceedings. (134 Ill. 2d R. 323(d).) The agreed statement of facts summarizes the testimony of defendant and the arresting officer, Paul Williams of the Bloomington, Illinois, police department.

Defendant testified that just prior to being stopped by Williams he was going to or on his way home from a jobsite in response to a request by his employer. He further testified that shortly before 1 a.m. on November 10, 1991, he was driving a truck in the City of Bloomington and was eastbound on Olive Street as he approached what defendant's counsel referred to as "S" curves. The defendant described the curves as being fairly tight curves which were marked with solid double yellow lines dividing the two lanes of traffic which travel in opposite directions. In describing the particular section of road involved, he stated that it was difficult to keep a vehicle in its marked lane through the curves. He then stated that it was very possible that his truck did cross the yellow lines, but he could not be certain. He did, however, state that there was no oncoming traffic in the lane into which he may have crossed and further that there was nothing unsafe about the maneuver.

The defendant further testified that he was stopped a few blocks away on Jackson Street and that, after a discussion with Williams and after taking some sobriety tests, he was arrested for driving while under the influence of alcohol, driving while license revoked, driving in violation of a restricted driving permit (RDP), failure to wear a seat belt, and improper lane usage. Ill. Rev. Stat. 1989, ch. 95½, pars. 11—501(a)(2), 6—303(a), 6—113(e), 12—603.1(a), 11—709(a).

On cross-examination, defendant admitted to driving across the solid yellow centerlines. He further testified that there were no parked cars or other obstructions which made it necessary for him to leave his lane.

Williams testified that on November 10, 1991, at approximately 12:50 a.m., he observed a truck parked in a lot adjacent to the Sunnyside Housing complex. Approximately three minutes later he saw the same truck traveling eastbound on Olive Street. At this

time Williams was also traveling on Olive Street in the same direction as the truck with no other vehicles between his vehicle and the truck, which was ahead of him. He further testified that as the truck began to negotiate the curves it left its lane by straddling the double yellow lines. The truck continued to straddle the centerlines with both driver's side wheels completely in the lane for oncoming traffic throughout the entire length of the curve until it straightened out after the curve, a distance of 200 to 300 feet. Williams also testified that at no time was he aware of any obstruction which made it necessary for the defendant to leave his lane. Williams described the curves as having one lane in each direction with street parking being prohibited immediately before, through and immediately after the curves. He further testified that there were in fact no vehicles parked on the curves on this particular morning to force the truck to go outside of its lane of traffic. There was no testimony from either party that the movements of defendant's vehicle in negotiating the "S" curve were not made safely. In fact, the evidence established that there was no oncoming traffic or danger to persons or property.

Williams testified that, once through the curves, he activated his emergency lights in an effort to stop the truck. It was several blocks later that the truck did stop on Jackson Street. After stopping the truck, he asked the driver for his driver's license and was handed an RDP which allowed the driver to drive for work purposes between the hours of 6:30 a.m. and 6:30 p.m. Mondays through Saturdays. Based upon his further observations and investigation, he placed the defendant under arrest for the hereinabove referred to offenses and issued him a uniform traffic citation for each.

On cross-examination, Williams testified that the driving through the curves which he witnessed did not pose any immediate hazard to oncoming traffic as there was none in the curves at the point when the defendant was straddling the centerlines. Officer Williams further testified on cross-examination about his observations made after the defendant's vehicle had been stopped.

The trial court found there was no oncoming traffic or danger to persons or property and at the time the officer stopped defendant he knew the "S" curve had been negotiated safely and there was no violation of section 11—709 of the Code. The trial court concluded that because defendant was charged with improper lane usage, a violation of section 11—709 "and that this is the only violation justifying the traffic stop," defendant met his burden to prove

the stop was unreasonable because "there was no testimony from either party that defendant's movements in negotiating the 'S' curve were not made safely."

The argument made by the State is that the officer had sufficient, articulable reason to justify the stop. It is within this context that the issue is raised of whether the trial court's finding was correct.

■ In *People v. Adams* (1992), 225 Ill. App. 3d 815, 817-18, 587 N.E.2d 592, 594-95, this court stated as follows:

"A proceeding to rescind a summary suspension is a civil action in which the burden of proof rests on the motorist. (*People v. Orth* (1988), 124 Ill. 2d 326, 337-38, 530 N.E.2d 210, 215.) The trial court's determination of whether the motorist's evidence constitutes a *prima facie* case for rescission will be overturned on appeal only if the finding is against the manifest weight of the evidence. (*Orth,* 124 Ill. 2d at 341, 530 N.E.2d at 217.) 'The trial court's decision will be considered to be against the manifest weight of the evidence if, after a review of the evidence, it is clearly evident that the conclusion opposite to the one reached by the trial court was the proper disposition.' *Rogers v. City of Jerseyville* (1990), 196 Ill. App. 3d 136, 142, 552 N.E.2d 1314, 1319.

\* \* \*

Even though no probable cause exists to arrest an individual, a police officer may make an investigatory stop if the officer's decision is based on specific and articulable facts and the rational inferences therefrom which warrant an investigative intrusion. (*Tylkowski,* 171 Ill. App. 3d at 98-99, 524 N.E.2d at 1116; *People v. Moffitt* (1985), 138 Ill. App. 3d 106, 111, 485 N.E.2d 513, 517.) Stopping a motor vehicle and detaining its occupants without a warrant is a seizure which would be prohibited by the fourth and fourteenth amendments of the United States Constitution unless there is at least an articulable and reasonable suspicion that an occupant or the vehicle is subject to seizure for a violation of the law. (*Delaware v. Prouse* (1979), 440 U.S. 648, 663, 59 L. Ed. 2d 660, 673, 99 S. Ct. 1391, 1401.) The test is not what the officer should have seen, but whether, viewed objectively, the 'totality of the facts and circumstances known to the officer at the time of the stop would warrant a reasonable and prudent person to believe a crime had been committed.' (*People v. Assenato* (1989), 186 Ill. App. 3d 331, 337, 542 N.E.2d 457, 460,

*cert. denied* (1990), 493 U.S. 1027, 107 L. Ed. 2d 754, 110 S. Ct. 736; see also Ill. Rev. Stat. 1989, ch. 38, par. 107—14; *Tylkowski*, 171 Ill. App. 3d at 98, 524 N.E.2d at 1116.)"

The issue is not whether the officer had probable cause to issue a citation against defendant for violating section 11—709(a). As we stated in *Adams*, the test is whether the " 'totality of the facts and circumstances known to the officer at the time of the stop would warrant a reasonable and prudent person to believe a crime had been committed.' " (*Adams*, 225 Ill. App. 3d at 818, 587 N.E.2d at 595, quoting *Assenato*, 186 Ill. App. 3d at 337, 542 N.E.2d at 460.) That the officer may have initially mischarged the defendant is not the test.

■ Defendant admits he crossed the yellow centerlines. His admission along with the testimony of Williams establishes a sufficient basis for the stop.

In *Village of Lincolnshire v. DiSpirito* (1990), 195 Ill. App. 3d 859, 865, 552 N.E.2d 1238, 1241, the court found:

"The fact that the defendant may later demonstrate a valid reason for what reasonably appears to be illegal conduct may affect his ultimate liability for that offense, but it should not affect the validity of the police officer's investigatory stop."

The reasoning adopted by the *DiSpirito* court is sound. The facts and circumstances known to the officer at the time of the stop did warrant him, as a reasonable and prudent person, to believe a traffic violation had been committed. The trial court's determination was in error.

For the foregoing reasons, the order of the circuit court of Mc-Lean County is reversed.

Reversed.

GREEN, P.J., and LUND, J., concur.