THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DENNIS SMITH, Defendant-Appellee.

Fourth District   No. 4—94—0576

Opinion filed March 3, 1995.

McCULLOUGH, J., dissenting.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Leslie Hairston, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Robert G. Kirchner, of Lerner & Kirchner, of Champaign, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In March 1994, defendant, Dennis Smith, was arrested for driving while under the influence of alcohol (DUI) (625 ILCS 5/11—501(a) (West 1992)). The arresting officer asked defendant to undergo a breath test, and when he refused, a statutory summary suspension of his driver's license resulted (625 ILCS 5/11—501.1 (West 1992)).

In April 1994, defendant filed a petition to rescind the statutory summary suspension. After a hearing in May 1994, the trial court

granted defendant's petition, ruling that the arresting officer improperly stopped defendant's vehicle.

The State appeals, and we reverse.

## I. BACKGROUND

A summary of the evidence presented at the hearing on defendant's petition to rescind statutory summary suspension is as follows. In the late evening hours, defendant left a tavern in Urbana, went to his car in the tavern's parking lot, and drove north on Cunningham Avenue. Urbana police officer Andrew Charles watched defendant do so from a vantage point in a parking lot across the street from the tavern. He was part of a DUI patrol in that area because of numerous DUI arrests of people who had been drinking at that tavern. Charles decided to follow defendant's vehicle to see if he would drive in compliance with the Illinois Vehicle Code (Code) (625 ILCS 5/1—100 *et seq.* (West 1992)). Charles followed defendant's vehicle for about 12 blocks down Cunningham Avenue, a four-lane road with a fifth lane in the center for turning. At that hour of the night, traffic was light.

As Charles followed defendant's vehicle in the left-hand lane, he noticed the driver's side wheels of defendant's car cross into the center turn lane by six inches or more. A few moments later, Charles observed the right-side wheels of defendant's vehicle cross into the right-hand lane, and again the tires went six inches beyond the lane line. Defendant did not signal any lane changes either time, nor did there appear to be any reason, such as traffic or potholes, for why he did not drive entirely within the bounds of the left-hand northbound lane.

Charles viewed defendant's driving as a violation of the Code and pulled him over accordingly. Charles testified that when he stopped defendant's car, he intended to give defendant a verbal warning instead of a ticket regarding his driving across the lane lines. He also intended to determine whether defendant was driving under the influence of alcohol. Once Charles approached defendant's vehicle, he smelled a strong odor of alcohol on defendant's breath and noticed that his speech was slurred. Defendant admitted to Charles that he had been drinking. He also had difficulty getting his driver's license out of his wallet. Charles asked defendant to perform a field-sobriety test, and defendant complied and failed. Charles then arrested him for DUI.

We commend the trial court for explaining its findings of fact and conclusions of law in its ruling on defendant's motion to rescind statutory summary suspension. The court's doing so has greatly helped this court and has clarified the issues on appeal.

The trial court described Charles as testifying "with commendable candor" and explicitly stated that it found Charles "to be very credible." The court noted that Charles did not claim to be stopping defendant because "of any reasonable, articulable facts to suggest that he had been driving under the influence of alcohol," but instead because the officer believed defendant drove his vehicle in violation of the Code other than DUI. Although defendant argued that Charles' stop of defendant's vehicle was a mere subterfuge because Charles intended to stop any vehicle driven by someone who left the tavern in question, the court concluded that Charles had not determined to stop defendant's vehicle *unless* Charles saw it involved in a violation of the Code. The court commented that what Charles asserted, "in essence, was his right to follow any vehicle in his unbridled discretion. I believe this he may do without contravening the fourth amendment."

The trial court then focused upon section 11—709(a) of the Code (625 ILCS 5/11—709(a) (West 1992)), which defines the offense of improper lane usage, and stated that the issue it must resolve is whether defendant's automobile, as observed by Charles, violated that section. After carefully analyzing case law, the court concluded that defendant's driving did not violate that section and that Charles did not have reasonable, articulable facts to justify the stop of defendant's car.

## II. ANALYSIS

### A. *Standard of Review*

In *People v. Adams* (1992), 225 Ill. App. 3d 815, 817, 587 N.E.2d 592, 594, this court wrote the following:

> "A proceeding to rescind a summary suspension is a civil action in which the burden of proof rests on the motorist. [Citation.] The trial court's determination of whether the motorist's evidence constitutes a *prima facie* case for rescission will be overturned on appeal only if the finding is against the manifest weight of the evidence."

In the present case, the trial court granted defendant's petition to rescind statutory summary suspension based upon the court's determination that the information Charles obtained about defendant's condition (which led Charles to arrest defendant for DUI) was obtained after Charles improperly stopped defendant's vehicle, thus violating the fourth amendment. Accordingly, the matter was presented to the court, and the court resolved it, as essentially a motion to suppress evidence, namely, the evidence Charles obtained as a result of stopping defendant's vehicle. For that reason, the standard

of review that applies regarding motions to suppress applies under these circumstances as well.

█ Generally, a court of review will not reverse a trial court's determination on a motion to suppress unless it is manifestly erroneous. (See *People v. Garriott* (1993), 253 Ill. App. 3d 1048, 1050, 625 N.E.2d 780, 782.) As this court explained in *Garriott*, "[t]his rule exists because motions to suppress typically involve assessing the credibility of witnesses and weighing their testimony, functions the trial court is best suited to accomplish." (*Garriott*, 253 Ill. App. 3d at 1050, 625 N.E.2d at 782-83.) In the present case, as in *Garriott*, the State (as appellant) does not contest the trial court's findings of fact which underlie its conclusions of law, and in our review of the trial court's decision in this case, we accept fully its factual determinations. Accordingly, because only the trial court's legal conclusions are at issue in this appeal, we review those conclusions *de novo*. See *In re D.G.* (1991), 144 Ill. 2d 404, 408-09, 581 N.E.2d 648, 649 ("where neither the facts nor credibility of the witnesses is contested, the issue *** is a legal question which a reviewing court may consider *de novo*"); see also O'Neill, *Standards of Review in Illinois Criminal Cases: The Need for Major Reform*, 17 S. Ill. U. L.J. 51, 78-80 (1992).

### B. *The Standard for Determining Whether Stopping Defendant's Vehicle was Justified*

█ In determining whether Charles justifiably stopped defendant's vehicle, we must first determine the correct standard by which to judge that action. In *People v. Repp* (1988), 165 Ill. App. 3d 90, 94, 518 N.E.2d 750, 753, the trial court rescinded the statutory summary suspension of defendant's driver's license on the ground that the arresting officer did not have probable cause to stop defendant's vehicle. The appellate court reversed, explaining as follows:

> "It is elementary that the correct standard to be applied in ascertaining whether an investigatory stop is justified is not the constitutional requirement of 'probable cause' to arrest or search, which is synonymous with this State's statutory standard of 'reasonable grounds' [citation], but the less exacting test of whether the police had a reasonable, articulable suspicion of criminal activity to warrant the stop [citation]. [Citations.] In order for an investigatory stop to pass constitutional [citation] and statutory [citation] muster, a police officer must have knowledge of specific, articulable facts which, when combined with the rational inferences from them, create a reasonable suspicion that the person in question either has committed or is about to commit a crime." *Repp*, 165 Ill. App. 3d at 94, 518 N.E.2d at 753-54.

See also *Adams*, 225 Ill. App. 3d at 818, 587 N.E.2d at 594 (even though no probable cause exists to make an arrest, a police officer

may make an investigatory stop if the officer's decision is based upon specific, articulable facts and the rational inferences therefrom).

### C. *Construction of Section 11—709 of the Code*

■ Section 11—709(a) of the Code reads, in pertinent part, as follows:

> "Driving on roadways laned for traffic. Whenever any roadway has been divided into 2 or more clearly marked lanes for traffic[,] the following rules in addition to all others consistent herewith shall apply.
>
> (a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." 625 ILCS 5/11—709(a) (West 1992).

The question which the trial court wrestled with as it attempted to construe this section was whether it consists of two elements or just one. The court explained that it accepted Charles' testimony that defendant's vehicle twice drove out of its lane, but the court then found a division of authority on whether that driving constituted a violation of section 11—709(a) of the Code. The court noted that it had always understood this section as requiring two things: "First, that you drive your vehicle completely within one lane to the extent you can, you can't straddle the lane line; and secondly, you can't change lanes until that can be done with reasonable safety. Left to my own devices, that is still the way I would read the statute."

However, the court cited *People v. Halsall* (1989), 178 Ill. App. 3d 617, 619, 533 N.E.2d 535, 536, a decision of the Third District Appellate Court, which reversed a defendant's conviction of improper lane usage because, although the evidence showed that the defendant did not drive within a single lane as nearly as possible, "[t]here was no evidence that when the defendant moved outside of his lane[,] he endangered himself, pedestrians, or other vehicles. Accordingly, we find that the State failed to prove that when the defendant moved outside of his lane[,] he did so without first determining that the movement could be made safely."

The trial court noted that in *Repp*, the Second District Appellate Court seemed to interpret section 11—709(a) of the Code differently than the *Halsall* court and more in the manner the trial court thought appropriate. (See *Repp*, 165 Ill. App. 3d at 95-96, 518 N.E.2d at 755.) Nonetheless, the trial court adopted the construction of the section given by *Halsall* primarily because of a 1965 abstract decision of the Fourth District Appellate Court (*People v. Pierceson* (1965), 61 Ill. App. 2d 246, 209 N.E.2d 193 (abstract of opinion)) that seemed to interpret that section as *Halsall* did.

In *Pierceson*, this court construed section 60(a) of the Uniform Act Regulating Traffic on Highways (Ill. Rev. Stat. 1963, ch. 95$^1$/$_2$, par. 157(a)), an earlier version of section 11—709(a) of the Code that reads verbatim with the current version, and held as follows: "Under [this statute,] the State has the burden of establishing beyond a reasonable doubt that the defendant moved from one lane of traffic to another, *and also that he made such movement without ascertaining that it could be done with safety.*" (Emphasis added.) (*Pierceson*, 61 Ill. App. 2d 246, 209 N.E.2d 193 (abstract of opinion) (slip op. at 4).) The trial court was obligated to follow *Pierceson*, but we are not, and we now overrule it. Further, we disagree with *Halsall* to the extent its construction of section 11—709(a) of the Code accords with *Pierceson*.

We construe section 11—709(a) of the Code as containing two separate, independent, and unconnected prohibitions regarding lane usage. To clarify the ambiguity of that section, we construe it as if it read as follows:

"(i) A vehicle shall be driven as nearly as practicable entirely within a single lane.

(ii) A vehicle being driven within a single lane shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."

Defendant's vehicle as observed by Charles was not driven "as nearly as practicable" entirely within a single lane. Thus, as we now construe section 11—709(a) of the Code, Charles possessed specific, articulable facts upon which to believe defendant's vehicle was in violation of the Code when he pulled it over.

We note that this construction of the statute comports with several prior decisions which discuss improper lane usage. In *People v. Houldridge* (1983), 117 Ill. App. 3d 1059, 1062, 454 N.E.2d 769, 771-72, this court discussed whether certain articulable facts could provide a sufficient basis for an investigatory stop of a motor vehicle and wrote the following: "[E]rratic driving, such as weaving across a roadway *or even weaving within the lane of traffic within which a vehicle is traveling*, provides a sufficient basis for an investigatory stop of a motor vehicle." (Emphasis added.) We note that unless section 11—709(a) of the Code were construed as set forth above, the statement in *Houldridge* about "even weaving within the lane of traffic within which a vehicle is traveling" as providing a sufficient basis for an investigatory stop of a motor vehicle would not be correct.

Further, in *People v. Loucks* (1985), 135 Ill. App. 3d 530, 533, 481 N.E.2d 1086, 1087, the court cited *Houldridge* and held that "[w]eaving within the lane of traffic in which a vehicle is traveling provides

a sufficient basis for an investigatory stop of a motor vehicle." Finally, we note that even in *Pierceson*, this court wrote the following:

> "All motorists are required to drive in one lane of traffic 'as nearly as practicable.' This is not an inflexible or unyielding rule. It is tempered with practicality and reason in the use of lanes of traffic in light of existing conditions." *Pierceson*, 61 Ill. App. 2d 246, 209 N.E.2d 193 (abstract of opinion) (slip op. at 5).

■ Our construction of section 11—709(a) of the Code serves to illustrate the important distinction between evidence sufficient to sustain a *conviction* and evidence sufficient to merely justify an *investigatory stop*—a distinction courts have not always appreciated. In the present case, for example, some reason might have existed (unknown to Charles) to explain why defendant did not drive his vehicle in just one lane, but instead drove it across lane markers on both the left and right sides. Once Charles stopped defendant's vehicle, he might have agreed with defendant's explanation regarding why defendant's driving entirely within a single lane was not "as practicable" as it may have appeared to Charles when he pulled over defendant's vehicle. That explanation, assuming it was forthcoming, would not, however, affect or diminish the legitimacy of Charles' stop of defendant's vehicle based upon the specific, articulable facts Charles then possessed, namely, that defendant was not driving entirely within a single lane.

We point this out because in *People v. Collins* (1987), 154 Ill. App. 3d 149, 151, 506 N.E.2d 963, 965, the trial court granted the defendant's petition to rescind statutory summary suspension on the ground that the police officer improperly pulled him over and then discovered he was driving while under the influence of alcohol. The Third District Appellate Court affirmed, noting that the only reason given for stopping defendant was the officer's observation of the defendant's car crossing the center line. At the hearing on the defendant's petition, he testified that he intentionally drove into a different lane in order to get around a car parked in his lane of traffic. The arresting officer testified that he could not remember whether a car had been so parked. The appellate court concluded that no initial traffic violation justified the investigatory stop by the police officer because "[t]he arresting officer did not refute defendant's claim that he swerved to avoid a parked car." (*Collins*, 154 Ill. App. 3d at 151, 506 N.E.2d at 965.) We disagree with *Collins* because it is based upon an analysis more appropriate to determining whether the State proved the charge of improper lane usage beyond a reasonable doubt, not to determining whether the officer had specific, articulable facts to conduct an investigatory stop.

We further disagree with *Collins* where it places any relevancy on the fact that "the officer admitted he did not issue any traffic violations for improper lane usage." (*Collins*, 154 Ill. App. 3d at 151, 506 N.E.2d at 965.) In *Collins*, once the officer stopped the defendant, he charged defendant only with DUI. On this issue, we concur fully with the Second District Appellate Court in *Repp*, where that court wrote that the arresting officer's decision not to charge the defendant with improper lane usage "is insignificant for purposes of our analysis because, as we have stated previously, an officer 'need not charge a minor violation when, after a stop, he discovers a serious one.' " *Repp*, 165 Ill. App. 3d at 96, 518 N.E.2d at 755.

In *People v. Gerwick* (1992), 235 Ill. App. 3d 691, 602 N.E.2d 93, this court reversed a trial court's order rescinding the statutory summary suspension of defendant's driver's license. At the hearing on the defendant's petition to rescind, the defendant admitted he drove across the solid yellow center line of the roadway. Citing section 11—709 of the Code, the trial court concluded that the defendant was improperly stopped because no evidence was presented that defendant's crossing the center line was not " 'made safely.' " (*Gerwick*, 235 Ill. App. 3d at 695, 602 N.E.2d at 96.) In reversing, this court cited the testimony of the defendant and the arresting officer regarding defendant's driving across the yellow center line as establishing a sufficient basis for the officer to pull the defendant over. This court then concluded as follows:

> "In *Village of Lincolnshire v. DiSpirito* (1990), 195 Ill. App. 3d 859, 865, 552 N.E.2d 1238, 1241, the court found:
>
> > 'The fact that the defendant may later demonstrate a valid reason for what reasonably appears to be illegal conduct may affect his ultimate liability for that offense, but it should not affect the validity of the police officer's investigatory stop.'
>
> The reasoning adopted by the *DiSpirito* court is sound. The facts and circumstances known to the officer at the time of the stop did warrant him, as a reasonable and prudent person, to believe a traffic violation had been committed. The trial court's determination was in error." (*Gerwick*, 235 Ill. App. 3d at 696, 602 N.E.2d at 97.)

We now reaffirm this court's holding in *Gerwick*.

## D. *Defendant's Subterfuge Argument*

■ As a last matter, we note that defendant argued that Charles' stop of his vehicle for improper lane usage was a mere subterfuge. Defendant contended that Charles always intended to pull defendant over to see if he might be driving while under the influence of alcohol. The trial court appropriately rejected this argument, but because

defendants apparently continue to make it, we take this opportunity to reaffirm what this court has repeatedly said in rejecting it: if police officers are *objectively* doing what they are legally authorized to do, their actions are not to be questioned on the basis of any *subjective* intent with which they acted. (See *People v. Salvator* (1992), 236 Ill. App. 3d 824, 837, 602 N.E.2d 953, 961; *People v. Flores* (1992), 231 Ill. App. 3d 813, 823, 596 N.E.2d 1204, 1211; *People v. Sorrells* (1991), 209 Ill. App. 3d 1064, 1069, 568 N.E.2d 497, 500.) The trial court in this case appropriately focused at all times on whether Charles had articulable, reasonable grounds to stop defendant and disregarded all of defendant's arguments about what Charles' "real intent" may have been.

### III. CONCLUSION

For the reasons stated, we reverse the trial court's order granting defendant's petition to rescind statutory summary suspension.

Reversed.

KNECHT, P.J., concurs.

JUSTICE McCULLOUGH, dissenting:
I disagree with the majority's need to rewrite section 11—709 of the Code. I also do not agree that the trial court's decision was against the manifest weight of the evidence.