THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. ELIZABETH MORALES, Defendant-Appellee.

Fourth District   No. 4—02—0161

Opinion filed November 3, 2003.

988

William A. Yoder, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:
In June 2001, the State charged defendant, Elizabeth Morales,

with possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 2000)) and possession of cannabis (not more than 2.5 grams of a substance containing cannabis) (720 ILCS 550/4(a) (West 2000)). In December 2001, defendant filed a motion to suppress the evidence against her, alleging that it was obtained during an illegal search. Following a December 2001 hearing, the trial court granted defendant's motion to suppress evidence.

The State appeals, arguing that the trial court erred by granting defendant's motion to suppress evidence. We reverse and remand.

## I. BACKGROUND

In lieu of a transcript of trial court proceedings, the parties have submitted to this court a document that is entitled "Bystander's Report of Motion to Suppress Hearing," which is signed by both parties. The report does not bear certification by the trial court, as is required under Supreme Court Rule 323(c) (166 Ill. 2d R. 323(c)). However, even without certification, we may accept the parties' agreed statement of facts as a substitute for a report of proceedings under subsection (d) of Supreme Court Rule 323. 166 Ill. 2d R. 323(d); see *People v. Gerwick*, 235 Ill. App. 3d 691, 692-93, 602 N.E.2d 93, 94-95 (1992) (in which this court accepted the parties' agreed statement of facts, although it was labeled a bystander's report and lacked the trial court's certification). The parties' agreed statement of facts summarizes the testimony and argument presented at the December 2001 hearing on defendant's motion to suppress evidence as follows.

Normal police officer Nathan Poehlman testified that around 1 a.m. on February 25, 2001, he noticed a parked car in a public park with the motor running and the lights off. A Normal ordinance provides that city parks close at 11 p.m. Poehlman spoke with the car's two occupants—Michael Garcia, seated in the driver's seat, and defendant, seated in the front passenger's seat. Poehlman learned that (1) Garcia's driver's license had been suspended; (2) an active De Witt County warrant was outstanding for Garcia's arrest; and (3) the license plate to Garcia's car had been suspended. Based on this information, Poehlman decided to arrest Garcia.

Prior to arresting Garcia, Normal police officer Shane Hackman arrived at the scene. After Garcia was arrested and secured in a squad car, Poehlman asked defendant to get out of the car. While Poehlman spoke with defendant outside the car, Hackman conducted a search of the car that was incident to Garcia's arrest, as well as an inventory search, given that the car was going to be towed due to expired plates. Defendant was not wearing a coat when she was standing outside the

car. Defendant did not inform Poehlman that (1) she had any personal property in the car, or (2) she needed to retrieve anything from inside the car.

Hackman pulled a jacket from the "console area," searched it, and asked defendant if it belonged to her. She acknowledged that the jacket belonged to her, and Hackman asked Poehlman to look inside the jacket pocket. When he did, Poehlman found a black film canister that contained "suspected cannabis" and a blue metal "one-hitter" pipe with burnt cannabis residue. The officers then arrested defendant. Neither Poehlman nor Hackman obtained defendant's consent to search the jacket. Prior to the search, defendant did not give the officers any reason to suspect her of criminal activity.

Hackman testified that around 1 a.m., he arrived at the scene to assist Poehlman. Hackman testified similarly to Poehlman regarding the bases for the search of the car—that is, incident to Garcia's arrest and as an inventory search. During the search, Hackman found a jacket in the console area of the car. He did not try to determine who owned the jacket before searching it. He felt the outside of the jacket, looking for weapons. He felt a hard object in the pocket area of the jacket, which he believed to be drug paraphernalia. He then asked defendant if the jacket belonged to her, and she responded that it did. He handed the jacket to Poehlman and asked him to look inside the pocket.

Defendant testified that around 1 a.m. on the day in question, she was a passenger in a car being driven by Garcia, whom she was dating. While she and Garcia were sitting in the car in a public park, the police approached the car and spoke with Garcia. They arrested Garcia for having a suspended license, and Poehlman asked defendant to get out of the car. She was not wearing a jacket when she did so. She thought she had left her jacket in the backseat. An officer searched the car, discovered her jacket, and asked if it belonged to her. She did not consent to the search of her jacket, and she did not tell either officer that she had any personal property in the car or that she needed to retrieve any personal property from the car.

Defense counsel argued that the evidence against defendant should be suppressed under *People v. James*, 163 Ill. 2d 302, 645 N.E.2d 195 (1994), because, absent probable cause, the officers were not justified in searching her jacket without her consent.

The State argued that the search of defendant's jacket was justified as (1) a search incident to Garcia's arrest, and (2) an inventory search. The State relied on *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860 (1981), and *People v. Bailey*, 159 Ill. 2d 498,

639 N.E.2d 1278 (1994), for its argument that a search incident to a custodial arrest extends to any containers found within the passenger compartment of the car.

In January 2002, the trial court entered an order granting defendant's motion to suppress evidence. In that order, the court found, in pertinent part, as follows:

"3. Officers made no attempt to determine the ownership of the coat until finding suspected contraband in the pocket, at which time [defendant] identified it as her coat.

4. Defendant did not consent to the search of her coat.

5. Since the officers knew [defendant] was a passenger in the vehicle, they had a duty to make an effort to determine ownership of the coat and obtain [d]efendant's consent to search it.

6. Their failure to do so is not cured by the fact that an inventory search of the vehicle might otherwise have been appropriate due to the arrest of [Garcia].

7. Any items seized from [defendant's] coat must therefore be suppressed."

This appeal followed.

## II. ANALYSIS

The State argues that the trial court erred by granting defendant's motion to suppress evidence because the search of defendant's jacket constituted a lawful search incident to Garcia's arrest. We agree.

### A. Forfeiture

■ Defendant does not address on the merits the State's argument that the officers lawfully searched defendant's jacket incident to Garcia's arrest. Rather, she contends that the State has forfeited this argument by failing to raise it below. Defendant's contention is patently without merit. The agreed statement of facts, which was signed by defense counsel, clearly indicates that the State argued at the suppression hearing that the search of defendant's jacket was a lawful search incident to arrest under *Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, 101 S. Ct. 2860, and *Bailey*, 159 Ill. 2d at 503, 639 N.E.2d at 1280.

Moreover, defendant cites no authority for her assertion that to preserve an issue for interlocutory appeal under Supreme Court Rule 604(a)(1) (188 Ill. 2d R. 604(a)(1)), the State must first file a motion to reconsider in the trial court. Arguments not supported by citation to authority do not comply with the requisites of Supreme Court Rule 341(e)(7) and do not merit our consideration on appeal. 188 Ill. 2d R. 341(e)(7); *People v. $1,124,905.00 United States Currency*, 269 Ill. App. 3d 952, 956, 647 N.E.2d 1028, 1031 (1995), *rev'd on other grounds*, 177 Ill. 2d 314, 325, 685 N.E.2d 1370, 1375 (1997).

## B. The Trial Court's Ruling on Defendant's Motion To Suppress Evidence

■ Generally, a trial court's ruling on a motion to suppress evidence will not be disturbed unless it is manifestly erroneous. *People v. Ceja*, 204 Ill. 2d 332, 347, 789 N.E.2d 1228, 1239 (2003). However, *de novo* review is appropriate when, as here, the facts are not disputed and the sole issue is whether suppression was warranted. *People v. Gipson*, 203 Ill. 2d 298, 304, 786 N.E.2d 540, 543 (2003).

■ "The fourth amendment to the United States Constitution does not prohibit all State-initiated searches and seizures; it prohibits only those that are unreasonable." *Bailey*, 159 Ill. 2d at 503, 639 N.E.2d at 1280. Although warrantless searches are *per se* unreasonable, a warrantless search may be considered reasonable if it falls within a specific exception to the fourth amendment's warrant requirement. A search incident to a lawful arrest is a traditional exception to that requirement. *Bailey*, 159 Ill. 2d at 503, 639 N.E.2d at 1280.

### 1. *Belton's Bright-Line Rule*

■ ■ In *Belton*, the United States Supreme Court addressed the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants. *Belton*, 453 U.S. at 459-63, 69 L. Ed. 2d at 774-76, 101 S. Ct. at 2863-65. In that case, after placing all four of the car's occupants under arrest, the arresting officer searched the car's interior. He found cocaine in the pocket of the defendant's jacket, which he had found on the backseat of the car. *Belton*, 453 U.S. at 456, 69 L. Ed. 2d at 772, 101 S. Ct. at 2862. The Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Belton*, 453 U.S. at 460, 69 L. Ed. 2d at 775, 101 S. Ct. at 2864. The Court further held that in such circumstances, the police "may also examine the contents of any containers found within the passenger compartment." *Belton*, 453 U.S. at 460, 69 L. Ed. 2d at 775, 101 S. Ct. at 2864. The Court explained that a "container" includes "any object capable of holding another object. It thus includes closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like." *Belton*, 453 U.S. at 460 n.4, 69 L. Ed. 2d at 775 n.4, 101 S. Ct. at 2864 n.4.

In so holding, the Court reiterated that

> "a lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the immediately surrounding area. Such searches have long

been considered valid because of the need 'to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape' and the need to prevent the concealment or destruction of evidence." *Belton*, 453 U.S. at 457, 69 L. Ed. 2d at 773, 101 S. Ct. at 2862, quoting *Chimel v. California*, 395 U.S. 752, 763, 23 L. Ed. 2d 685, 694, 89 S. Ct. 2034, 2040 (1969). *Belton* thus essentially held that the entire passenger compartment lies within the reach of the arrested occupant. By so holding, *Belton* sought to provide a workable "bright-line" rule for police and thereby "avoid case-by-case evaluations of whether the arrestee's area of control within the automobile extended to the precise place where the officer found the weapon or evidence." *People v. Stehman*, 203 Ill. 2d 26, 34, 783 N.E.2d 1, 5 (2002). The *Belton* Court also noted that " '[a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the [f]ourth [a]mendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.' " *Belton*, 453 U.S. at 461, 69 L. Ed. 2d at 775-76, 101 S. Ct. at 2864, quoting *United States v. Robinson*, 414 U.S. 218, 235, 38 L. Ed. 2d 427, 440-41, 94 S. Ct. 467, 477 (1973).

### 2. Bailey

The Supreme Court of Illinois's decision in *Bailey* illustrates the application of *Belton*'s bright-line rule. In *Bailey*, a police officer had stopped a car driven by the defendant, Brian Bailey, for not having a front license plate. In addition to Bailey, four occupants were in the car. After the officer determined that Bailey's driver's license had been suspended, he arrested Bailey, handcuffed him, searched him, and placed him in the back of the squad car. The officer then directed the passengers out of the car and searched the car's interior. He discovered a container in the glove compartment that contained drug paraphernalia. That evidence became the basis for an additional charge against Bailey. *Bailey*, 159 Ill. 2d at 501, 639 N.E.2d at 1279.

■ Our supreme court held that *Belton* justifies the search of a vehicle incident to arrest without regard to the nature of the offense supporting the arrest. *Bailey*, 159 Ill. 2d at 505, 639 N.E.2d at 1281. In so holding, the court noted that "[a]lthough a search incident to arrest is based on the need to disarm and discover evidence, the authority to search does not depend on the probability in a particular case that weapons would in fact be found or evidence would in fact be destroyed." *Bailey*, 159 Ill. 2d at 504, 639 N.E.2d at 1281; see also *People v. Allibalogun*, 312 Ill. App. 3d 515, 519, 727 N.E.2d 633, 637 (2000) ("A search of a vehicle under *Belton* is permissible even after the defendant has been removed from the car, handcuffed, and placed in a squad car, and even if he is in the custody of several officers").

### 3. *Wyoming v. Houghton*

In *Wyoming v. Houghton*, 526 U.S. 295, 143 L. Ed. 2d 408, 119 S. Ct. 1297 (1999), the Supreme Court considered whether, when a police officer searches a car based on probable cause to believe that the car contains contraband, he may search a passenger's personal belongings found inside the vehicle. In that case, a highway patrol officer stopped a car for speeding and driving with a faulty brake light. In addition to the male driver, two females were seated in the front passenger seat. While questioning the driver, the officer noticed that the driver had a hypodermic syringe in his shirt pocket. *Houghton*, 526 U.S. at 297-98, 143 L. Ed. 2d at 413, 119 S. Ct. at 1299. After returning to his patrol car to obtain a pair of gloves, he instructed the driver to get out of the car and place the syringe on the hood. The officer asked the driver why he had the syringe, and the driver said that he used it to take drugs. At that point, a backup officer ordered the two passengers out of the car. Meanwhile, the primary officer searched the passenger compartment for contraband. On the backseat, he found a purse, which one of the passengers claimed as hers. The purse contained drug paraphernalia and a syringe containing methamphetamine. The passenger was later charged with possession of methamphetamine. *Houghton*, 526 U.S. at 297-98, 143 L. Ed. 2d at 413, 119 S. Ct. at 1299. Prior to her trial, the passenger challenged the search of her purse on fourth amendment grounds.

■ The Wyoming Supreme Court held that the search of the passenger's purse violated the fourth amendment because the officer knew or should have known that the purse did not belong to the driver, but to one of the passengers. *Houghton*, 526 U.S. at 299, 143 L. Ed. 2d at 414, 119 S. Ct. at 1300. However, the United States Supreme Court disagreed, holding that police officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the search. *Houghton*, 526 U.S. at 307, 143 L. Ed. 2d at 419, 119 S. Ct. at 1304. In so holding, the Court cited its previous holding in *United States v. Ross*, 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982), that probable cause to search a lawfully stopped car justifies the search of every part of the car and its contents that may conceal the object of the search. The Court noted that (1) no limitation was expressed in *Ross* restricting searches to only those containers owned by the driver, and (2) *Ross* had been broadly applied to justify searches of all containers within a car, without qualification as to ownership. *Houghton*, 526 U.S. at 301, 143 L. Ed. 2d at 415, 119 S. Ct. at 1301.

The Court further reasoned that passengers, no less than drivers, have a reduced expectation of privacy with regard to the property that

they transport in cars. *Houghton*, 526 U.S. at 303-04, 143 L. Ed. 2d at 417, 119 S. Ct. at 1302. Meanwhile, the governmental interests at stake are substantial: "Effective law enforcement would be appreciably impaired without the ability to search a passenger's personal belongings when there is reason to believe contraband or evidence of criminal wrongdoing is hidden in the car." *Houghton*, 526 U.S. at 304, 143 L. Ed. 2d at 417, 119 S. Ct. at 1302. The Court recognized that a criminal could hide contraband in a passenger's belongings as readily as in other containers in the car, and rejected as impractical any requirement that before conducting vehicle searches officers must determine (1) ownership of containers, or (2) whether the driver and passenger had the opportunity to conspire to conceal contraband.

> "To require that the investigating officer have positive reason to believe that the passenger and driver were engaged in a common enterprise, or positive reason to believe that the driver had time and occasion to conceal the item in the passenger's belongings, surreptitiously or with friendly permission, is to impose requirements so seldom met that a 'passenger's property' rule would dramatically reduce the ability to find and seize contraband and evidence of crime. *** [O]nce a 'passenger's property' exception to car searches became widely known, one would expect passenger-confederates to claim everything as their own. And one would anticipate a bog of litigation—in the form of both civil lawsuits and motions to suppress in criminal trials—involving such questions as whether the officer should have believed a passenger's claim of ownership, whether he should have inferred ownership from various objective factors, whether he had probable cause to believe that the passenger was a confederate, or to believe that the driver might have introduced the contraband into the package with or without the passenger's knowledge." *Houghton*, 526 U.S. at 305-06, 143 L. Ed. 2d at 418, 119 S. Ct. at 1303.

### 4. *Applying Belton and Houghton*

Although *Houghton* involved a vehicle search based on probable cause, courts have applied its reasoning, in conjunction with *Belton*, when faced with the issue now before us—namely, whether, upon the lawful arrest of the operator of a vehicle, a warrantless search incident to that arrest may properly extend to a container situated in the passenger compartment of the vehicle when that container belongs to a passenger who has not been arrested at the time of the search. See, *e.g.*, *State v. Tognotti*, 663 N.W.2d 642, 648 (N.D. 2003) (holding that incident to the valid arrest of a car's occupant, the arresting officer could search the contents of a nonarrested occupant's purse that was voluntarily left inside the car and citing relevant cases). We agree with this analysis.

■ *Houghton* well articulates the need for maintaining clear and workable rules for police searches, and we conclude that imposing a restriction on vehicle searches incident to arrest based on ownership of containers or other articles left inside the vehicle would "unnecessarily dim" *Belton*'s bright-line rule. See *Tognotti*, 663 N.W.2d at 646. When police stop a car with multiple passengers and arrest one of them, the need for the police to discover either hidden weapons that could be turned upon them or evidence that could be destroyed is no less acute than when the police stop a vehicle and arrest its sole occupant. Indeed, because of the number of people involved, the need may be even greater. Given that third-party ownership of an item within a car's passenger compartment would not necessarily prevent an arrestee from gaining access to it, third-party ownership of an item should not bar police from searching that item in the same manner as if it were owned by the arrestee. To hold otherwise would create a rule that is not only impracticable but also potentially dangerous to police officers. We thus conclude that in this case, Hackman and Poehlman were justified in searching defendant's jacket when they searched Garcia's car incident to his arrest. Accordingly, we hold that the trial court erred by suppressing the evidence found therein. See *State v. Ray*, 260 Neb. 868, 876-77, 620 N.W.2d 83, 89 (2000) (Nebraska Supreme Court holding that upon the lawful arrest of the driver, a warrantless search incident to that arrest properly extended to a knapsack in the passenger compartment that belonged to a passenger who had not been arrested at the time of the search); *State v. Steele*, 613 N.W.2d 825, 830 (S.D. 2000) (Supreme Court of South Dakota holding that a search incident to the driver's arrest extended to a passenger's purse, even though the police officer had requested that the passenger leave the purse in the car); *State v. Pallone*, 236 Wis. 2d 162, 188, 613 N.W.2d 568, 581 (2000) (Supreme Court of Wisconsin holding that the warrantless search of a passenger's duffel bag was a valid search incident to the arrest of the driver); *People v. McMillon*, 892 P.2d 879, 884-85 (Colo. 1995) (Supreme Court of Colorado held that the search of a passenger's purse was valid as part of a search incident to the driver's arrest); *State v. Moore*, 619 So. 2d 376, 377 (Fla. App. 1993) (Florida appellate court held that police had the right to search a passenger's purse incident to the arrest of the driver, and police did not need the passenger's consent).

## C. *James*

■ In so holding, we note that defendant's reliance on *James*, 163 Ill. 2d 302, 645 N.E.2d 195, is misplaced. In *James*, the defendant, Delores James, was a passenger in a car that was stopped by the police.

The officers directed the driver, James, and a third passenger to step out of the car. When James got out of the car, she left her purse on the front-passenger seat. An officer escorted James away from the car. Without James's knowledge, the driver of the car consented to a search of the car. During that search, officers opened James's purse and found cocaine. James was arrested and charged with unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 1992)). *James*, 163 Ill. 2d at 304, 645 N.E.2d at 197.

The trial court granted James's motion to suppress the evidence, and on appeal, this court reversed. *People v. James*, 242 Ill. App. 3d 675, 612 N.E.2d 96 (1993). James appealed to the Supreme Court of Illinois, and that court reversed our ruling and affirmed the trial court's judgment. In so doing, the supreme court first determined that the sole justification for the officers' search of the car was the driver's consent. *James*, 163 Ill. 2d at 313, 645 N.E.2d at 201. Thus, the court defined the issue before it as whether the officer was justified in searching the defendant's purse under the apparent authority rule. The court concluded that the officer acted unreasonably when he searched the purse while ignorant of the identity of its owner (*James*, 163 Ill. 2d at 319, 645 N.E.2d at 204) and that the apparent authority rule did not allow law enforcement officers to " 'proceed without inquiry in ambiguous circumstances' " (*James*, 163 Ill. 2d at 319, 645 N.E.2d at 203, quoting 3 W. LaFave, Search & Seizure § 8.3(g), at 266 (2d ed. 1987)).

A vehicle search incident to arrest is wholly distinguishable from a search based on consent. If Hackman and Poehlman had searched Garcia's car and defendant's jacket pursuant to Garcia's consent, the supreme court's holding in *James* would be instructive. However, once the officers lawfully placed Garcia under arrest, they needed no further justification for searching the passenger compartment of Garcia's automobile and the contents therein. See *Belton*, 453 U.S. at 461, 69 L. Ed. 2d at 775-76, 101 S. Ct. at 2864, quoting *Robinson*, 414 U.S. at 235, 38 L. Ed. 2d at 440-41, 94 S. Ct. at 477 (" 'A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the [f]ourth [a]mendment; that intrusion being lawful, a search incident to the arrest requires no additional justification' ").

## III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment and

remand for further proceedings consistent with the views expressed herein.

Reversed and remanded.

McCULLOUGH, J., concurs.

PRESIDING JUSTICE MYERSCOUGH, specially concurring.

I write separately to disagree with the majority's conclusion that the defendant does not comply with Supreme Court Rule 341(e)(7) (188 Ill. 2d R. 341(e)(7)). The defendant's analogy to *People v. Durgan*, 281 Ill. App. 3d 863, 667 N.E.2d 730 (1996) (Fourth District), is well taken and a valid argument. However, it is not within the province of the appellate court to address this question. Rather, the supreme court must establish this special appellate procedure by rule. As the supreme court has not explicitly required the State to file a petition to reconsider before taking an appeal under Rule 604(a) (188 Ill. 2d R. 604(a)), I cannot say that it is required. I therefore concur with the judgment of the court, but dissent from the reasoning rejecting the defendant's argument.